## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

SAMANTHA LEE,

       Plaintiff,

     vs.                          Civ. No. 12-1124 MCA/ACT

McKINLEY COUNTY ADULT
DETENTION CENTER, et al.,

       Defendants.


### ORDER STAYING DISCOVERY

**THIS MATTER** comes before the Court on Defendants McKinley County Adult Detention Center and Mabel Henderson's ("County Defendants") Motion to Stay Discovery, Including All Deadlines Set Forth in the Court's Initial Scheduling Order[1], Pending Outcome of County Defendants' Motion to Dismiss [Doc. No. 19] filed on January 21, 2013 ("Motion to Stay"). On January 28, 2013, Plaintiff filed a Response to the Motion to Stay Discovery [Doc. No. 20] ("Response"). On January 29, 2013, the County Defendants filed a Reply [Doc. No. 21] ("Reply"). A Notice of Briefing Complete [Doc. No. 22] was filed on January 30, 2013.

The issue before the Court is whether discovery should be stayed pending determination of the qualified immunity defense set forth in the County Defendants' Motion to Dismiss. [Doc. No. 17]. The Court, having considered the parties' filings, the relevant law, and otherwise being fully advised in the premises, finds the Motion is well taken and will be GRANTED.

---

[1] The Court notes that the Initial Scheduling Conference in this matter is scheduled for April 4, 2013. A Scheduling Order governing discovery in this matter has yet to be entered.

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff filed a Complaint for Damages Due to Failure to Provide Medical Care in the Second Judicial District Court on October 4, 2012. [Doc. No. 1-2]   Plaintiff named as Defendants McKinley County Adult Detention Center ("MCADC"), Mabel Henderson, John/Jane Doe I individually and in his official capacity as a Deputy Sheriff of McKinley County, Correctional Healthcare Companies, Inc. ("CHC"), Bernalillo County Metropolitan Detention Center ("BCMDC"), Ramon Rustin, John/Jane Doe II as Director of Medical Services at the BCMDC, and John/Jane Doe III individually and in his/her official capacity as employee of BCMDC and/or CHC.

Defendants MCADC and Mabel Henderson filed a Notice of Removal on October 30, 2012. [Doc. No. 1.] As grounds for removal, Defendants state that "the Plaintiff's Complaint alleges that the Defendants purportedly violated the Plaintiff's rights under the United States Constitution and Laws of the State of New Mexico." [Id. at 2.] Jurisdiction is conferred to this Court by 28 U.S.C. § 1331. [Id.]

Plaintiff filed an Amended Complaint ("Amended Complaint") on November 13, 2012, terminating BCMDC and substituting the Board of County Commissioners for the County of Bernalillo.  [Doc. No. 8.] Defendants MCADC and Mabel Henderson filed their Answer on December 3, 2012. [Doc. No. 13.] Defendants Board of County Commissioners for the County of Bernalillo and Ramon Rustin filed their Answer on December 5, 2012. [Doc. No. 14.] Defendant CHC filed its Answer on December 18, 2012. [Doc. No. 15.]

The Court entered an Initial Scheduling Order on January 8, 2013, setting an Initial Scheduling Conference for April 4, 2013. [Doc. No. 16.]

Defendants MCADC and Mabel Henderson filed an Opposed Motion to Dismiss on January 20, 2013. [Doc. No. 17.] Defendants MCADC and Mabel Henderson filed an Opposed Motion to Stay on January 21, 2013. [Doc. No. 19.]

Plaintiff's Complaint states that on October 14, 2010, while an inmate incarcerated at the MCADC, Plaintiff broke her right humerus and was taken by Emergency Medical Services and McKinley County Sheriff's Duties to Indian Health Services in Gallup, New Mexico. [Doc. No. 1-2 at 4.] Due to the nature of the break, Indian Health Services informed Plaintiff that she would need surgery to repair her broken arm. [Id.] The surgery was subsequently scheduled for October 18, 2010. [Id.] On October 15, 2010, Plaintiff was transferred to the BCMDC. [Id. at 5.] Plaintiff states that it took approximately six days before she was seen by a medical doctor at the BCMDC, and that she did not see an orthopedic specialist until two weeks after her arrival at BCMDC. [Id. at 6.]   In the meantime, she was given Naproxen for pain and her arm was placed in a sling. [Id. at 5.]  Plaintiff underwent surgery in January 2011 to repair the fracture at the University of New Mexico Hospital ("UNMH"), at which time "[n]umerous metal plates, screws, and rods were placed in Plaintiff's arm." [Id. at 6.] The operation was successful; however, on April 3, 2011, Plaintiff reinjured her right humerus. [Id.] Subsequent x-rays taken of Plaintiff's arm while in custody at BCMDC "failed to show that the hardware in Plaintiff's arm had become disengaged from the bone and were imbedded in the soft tissue of Plaintiff's arm." [Id. at 7.] After being released from custody in August 2011, Plaintiff sought treatment at UNMH where she was told she would need a bone graph. [Id.] Plaintiff sought medical treatment at Indian Health Services in Gallup, New Mexico, where she was told that "the

hardware in her arm had disengaged from the bone and she was suffering from an MRSA[2] infection and secondary candida parapsilosis infection." [Id.] Plaintiff underwent multiple surgeries to clean and repair her arm and months of intravenous and oral antibiotic treatments. [Id. at 8.] Plaintiff underwent a second surgery in August 2012 to repair the "extensive damage to the bone and tissue caused by the infection, break, and disengaged hardware from the April 2011 fall." [Id.] Plaintiff claims she cannot lift anything with her arm and that her arm is permanently disfigured. [Id.]

Plaintiff's Complaint alleges the following claims: (1) § 1983 Eighth Amendment violation-failure to provide medical care and treatment; (2) § 1983 Eighth Amendment violation-failure to train and supervise against Defendants; (3) state law claim for negligent medical care and treatment against all Defendants; (4) state law claim for negligent hiring, training, and supervision against all Defendants; and (5) state law claim for outrageous conduct against all Defendants. [Doc. No. 1-2 at 8, 9, 11, 13, 14.]  Plaintiff seeks the following relief: (1) judgment jointly and severally against all Defendants on all claims; (2) monetary damages, including punitive damages, in an amount to be determined at trial; (3) an award of her attorneys' fees, costs, and expenses in bringing this lawsuit; and (4) all other relief that law and justice require. [Id. at 15.]

The individually named County Defendants have filed a Motion to Dismiss in this matter alleging that they are entitled to qualified immunity and that all discovery should be stayed pending the outcome of their Motion to Dismiss. [Doc. No. 19 at 1.]  Plaintiff requests that the

---

[2]  Methicillin-resistant Staphylococcus aureus (MRSA) infection is caused by a strain of staph bacteria that's become resistant to the antibiotics commonly used to treat ordinary staph infections. *http://www.mayoclinic.com/health/mrsa/DS00735.*

Court deny the County Defendants' Motion to Stay or, in the alternative, to allow discovery to continue for the individually named Defendants (Defendant Mabel Henderson and Defendants John/Jane Doe), as well as the other Defendants who are not a party to the County Defendants' Motion to Dismiss.  Plaintiff argues that Plaintiff's state law claims of negligent medical care and negligent hiring, training, and supervision may proceed no matter how the qualified immunity issue is resolved and discovery should therefore be allowed.  Plaintiff supports her request by citing to several cases in which limited discovery was allowed pending the outcome of a motion raising a qualified immunity defense. [Id. at 3.] Plaintiff also attached a Fed. R. Civ. P. 56(d) Affidavit.

In their Reply, the County Defendants reassert their argument that case law supports that all discovery in this case must be stayed until the Court has ruled on the issue of qualified immunity. [Doc. No. 21.]

## RELEVANT LAW

### A.   Qualified Immunity

Qualified immunity recognizes the legitimate "need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982) (quoting *Butz v. Economousm*, 438 U.S. 478, 506 (1978)).  Qualified immunity shields government officials from liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 815 (2009).  Qualified immunity is not only a defense to liability but also entitlement to immunity from suit and other demands of litigation.  *Workman v. Jordan*, 958 F.2d 332, 336 (10th Cir. 1992) (*citing Siegert v. Gilley*, 500 U.S. 226, 231, 111 S.Ct. 1789, 1793,

114 L.Ed.2d 277 (1991)).  The doctrine of qualified immunity not only protects government

officials from the costs associated with trial, but also from "the other burdens of litigation,"

which include "the burdens of broad reaching discovery."  *Mitchell v. Forsyth*, 472 U.S. 511,

526 (1985) (internal quotations omitted).  When a defendant asserts qualified immunity, the

district court should stay discovery until the immunity issue is resolved.  *Workman v. Jordan*,

958 F.2d 332, 336 (10th Cir. 1992).

The defense of qualified immunity is a threshold issue, and "[d]iscovery should not be

allowed until the court resolves the threshold question whether the law was clearly established at

the time the allegedly unlawful action occurred."  *Workman v. Jordan*, 958 F.2d 332, 336 (120th

Cir. 1992)(citing *Siegert v. Gilley*, 500 U.S. 226, 231 (1991)).  "Qualified immunity questions

should be resolved at the earliest possible stage of a litigation."  *Anderson v Creighton*, 483 U.S.

635, 646 n.6 (1987).  A motion to dismiss is the earliest vehicle by which defendants may

dispose of claims against them.  Such motions play a key role in providing government officials

with the protection from litigation to which they are entitled under the qualified immunity

doctrine.  *See Behrens v. Pelletier*, 116 S.Ct. 834, 839-40 (1996).  The Supreme Court has

suggested that, to avoid unnecessary exposure to burdensome discovery, the preferred practice is

for the government officials to move to dismiss the action based on qualified immunity before

discovery is ordered.  *See Crawford-El v. Britton*, 523 U.S. 574, 598 (1998).

When a defendant asserts qualified immunity at summary judgment, the responsibility

shifts to the plaintiff to meet a "heavy two-part burden."  *Medina v. Cram*, 252 F.3d 1124, 1128

(10th Cir. 2001).  The plaintiff must demonstrate on the facts alleged that: (i) the defendant's

actions violated his or her constitutional or statutory rights; and (ii) the right was clearly

established at the time of the alleged unlawful activity.  *See Riggins v. Goodman*, 572 F.3d 1101,

1107 (10th Cir. 2009).  In evaluating whether the right was clearly established, the court considers whether the right was sufficiently clear that a reasonable government employee in the defendant's shoes would understand what she did violated the right.  *See Casey v. W. Las Vegas Indep. Sch. Dist.*, 473 F.3d 1323, 1327 (10th Cir. 2007).

The Tenth Circuit Court of Appeals has addressed whether to permit limited discovery for purposes of responding to a motion for qualified immunity.  *See, e.g., Trask v. Franco*, 446 F.3d 1036, 1041-42 (10th Cir. 2006) (district court did not abuse discretion in denying additional discovery where Rule 56(f)[3] affidavits neither identified any "probable facts not available," nor stated with specificity how the additional material would rebut qualified immunity motion) (citation omitted); *Workman v. Jordan*, 958 F.2d 332, 336 (10th Cir. 1992) (if discovery is allowed to respond to a qualified immunity motion, it "must be tailored specifically to the question of [defendant]'s qualified immunity") (citation omitted); *Lewis v. City of Ft. Collins*, 903 Fd.2d 752, 758 (10th Cir. 1990) ("[I]n response to a summary judgment motion based on qualified immunity, a plaintiff's 56[d] affidavit must demonstrate how discovery will enable them to rebut a defendant's showing of objective reasonableness or, stated alternatively, demonstrate a connection between the information he would seek in discovery and the validity of the defendant's qualified immunity assertion")(citations and internal quotations omitted).  The Tenth Circuit further observed that Rule 56(d) discretion "must be limited when a summary judgment motion is based on qualified immunity because insubstantial lawsuits 'against government officials [should] be resolved *prior to discovery and on summary judgment* if possible.'  Liberal application of [R]ule 56[d] should not be allowed to subvert the goals of

---

[3]  The operative language of Rule 56(d) was previously found at Rule 56(f), prior to the 2010 amendment to the rules.  Thus, many of the cases discussing the Rule 56 affidavit refer to Rule 56(f).

*Harlow* and its progeny." *Id.* (emphasis in original) (citation omitted). *See also Jones v. City and County of Denver, Co.*, 854 F.2d 1206, 1211 (10th Cir. 1988) (Rule 56[d] discretion is further restricted in the face of a summary judgment motion based on qualified immunity).

**B.    RULE 56(d)**

Rule 56(d) of the Federal Rules of Civil Procedure states:

> (d) When Facts Are Unavailable to the Nonmovant. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) defer considering the motion or deny it;
>
> (2) allow time to obtain affidavits or declarations or to take discovery; or
>
> (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).

In *Stark-Romero v. National R.R. Passenger Co.* (AMTRAK), 805 F.Supp.2d, 1145, 1183 (D.N.M. 2011), the District Court explained:

> "The general principle of Rule 56(f) is that summary judgment should be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Price v. W. Res., Inc.*, 232 F.3d 779, 783 (10th Cir. 2000) (internal quotation marks omitted).  "Rule 56(f) does not require, however, that summary judgment not be entered until discovery is complete." *Trujillo v. Bd. of Educ. of the Albuquerque Pub. Schs.*, 2007 WL 2461629, at *3 (D.N.M. June 5, 2007).

(internal citations omitted).  In *Ben Ezra, Weinstein, and Co., Inc. v. Am. Online Inc.*, 206 F.3d 980, 987 (10th Cir. 2000), *cert. denied*, 531 U.S. 824 (2000), the Tenth Circuit Court of Appeals instructed:

> Fed. R. Civ. P. 56[d] requires that the party seeking to invoke its protection state with specificity how the additional material will rebut the summary judgment motion. *Jensen v. Redev. Agency*, 998 F.2d 1550, 1554 (10th Cir. 1993).  A party

may not invoke Fed. R. Civ. P. 56[d] by merely asserting that discovery is incomplete or that specific facts necessary to oppose summary judgment are unavailable. *Id.* Rather, the party must demonstrate precisely how additional discovery will lead to a genuine issue of material fact. Id.

(emphasis added). The proper procedure by which to request further discovery prior to the court's ruling on a summary judgment motion is to file a Rule 56(d) affidavit explaining "why facts precluding summary judgment cannot be presented." *Campfield v. State Farm Mut. Auto. Ins. Co.*, 532 F.3d 1111, 1124 (10th Cir. 2008) (internal citation omitted).

To satisfy the requirements of rule 56(d) and justify additional discovery, the Tenth Circuit Court of Appeals further explained that:

. . . a party seeking to defer a ruling on summary judgment under Rule 56(f) must provide an affidavit "explain[ing] why facts precluding summary judgment cannot be presented. *Comm. For the First Amendment v. Campbell*, 962 F.2d 1517, 1522 (10th Cir. 1992) (citation omitted). This includes identifying (1) "the probable facts not available," (2) why those facts cannot be presented currently, (3) "what steps have been taken to obtain these facts," and (4) "how additional time will enable [the party] to" obtain those facts and rebut the motion for summary judgment. *Id.*; *see also Price*, 232 F.3d at 783 ("Rule 56(f) does not operate automatically. Its protections . . . can be applied only if a party satisfies certain requirements.")

*Valley Forge Ins. Co. v. Health Care Mgmt. Partners, Ltd.*, 616 F.3d 1086, 1096 (10th Cir. 2010). To make a sufficient showing for discovery under Rule 56(d), the movant must provide what facts are needed with specificity; vague or conclusory statements are insufficient. *See Trask v. Franco*, 446 F.3d 1036, 1041-42 (10th Cir. 2006) (discussing what is required to satisfy Rule 56(d)). "Rule 56([d]) is not a license for a fishing expedition . . . ." *Lewis v. Ft. Collins*, 903 F.2d 752, 759 (10th Cir. 1990).

## DISCUSSION

The County Defendants filed a Motion to Dismiss based on a claim of qualified immunity.  A Rule 12(b)(6) motion does not properly challenge the evidence that may support a claim for relief, but is confined to the sufficiency of the allegations asserted in support of that claim. *Central National Bank of Alva, Oklahoma v. Spearman Cattle Feeders, Inc*., 2012 WL 2122173 (W.D. Okla. June 11, 2012) (*citing MacArthur v. San Juan County*, 309 F.3d 1216, 1221 (10th Cir.2002)). Thus, issues related to the evidence are not properly before the Court. Here, County Defendants are not relying on any materials outside of the pleadings.  In addition, the County Defendants have raised the issue of qualified immunity as a threshold issue at the earliest stage of litigation.  Therefore, discovery should not be allowed until that threshold issue is decided. *Workman v. Jordan*, 958 F.2d 332, 336 (120th Cir. 1992)(citing *Siegert v. Gilley*, 500 U.S. 226, 231 (1991)).

### A.    Qualified Immunity

While Plaintiff cites to several cases to support her argument that limited discovery should be allowed, they are not helpful to Plaintiff's position.  In *Rome v. Romero*, 225 F.R.D. 640 (D.Colo. 2004), the court notes that when a qualified immunity defense is asserted, some limited discovery is still permitted in three instances: (1) "when the doctrine is asserted in a motion for summary judgment on contested factual assertions"; (2) when a plaintiff faced with a defense of qualified immunity in a motion for summary judgment may also be entitled to conduct discovery to explore facts essential to justify opposition to the motion as provided for by Fed. R. Civ. P. 56(f); and (3) when the defendant "foregoes an opportunity to address [qualified immunity] prior to the commencement of discovery." *Rome*, 225 F.R.D. at 643-644.  Here, the County Defendants have filed a Motion to Dismiss.  As stated in *Rome*, "[t]he protection of the

10

governmental actor is best served when the issue of qualified immunity is raised at the earliest possible stage of the litigation."  *Rome*, 225 F.R.D. at 644.

    The subsequent Colorado cases cited by Plaintiff that applied *Rome* are also distinguishable.  In *Bustos v. United States of America*, 2009 U.S. Dist. LEXIS 15928 (D.Colo. Feb.18, 2009), the court noted that "the mere pendency of a Motion to Dismiss on jurisdictional grounds does not entitle the federal defendants to a complete and indefinite stay, especially here where the claims vary in terms of cause of action and request for relief, some subject to protections such as qualified immunity and some not so protected."  *Bustos*, 2009 U.S. Dist. LEXIS 15928, at *9 (citing *Rome v. Romero*, 225 F.R.D. 640, 643-645 (D. Colo. 2004)(limiting stay of discovery to claims subject to dismissal on jurisdictional grounds only.)).  That said, the court in *Bustos* held that any potential harm to the plaintiff was outweighed by the burden on the defendants resulting from conducting and responding to discovery while the Motion to Dismiss was pending.  *Id.*  Notwithstanding its holding, the court went on to allow only already opened discovery of certain files to which the defendants had already agreed to release, along with narrowly construed written discovery into the identities of John Doe defendants which had already been discussed by the parties and described in defendants' motion to stay.  *Id.* at *10. Here, discovery has not yet commenced, and no agreements have been made by the parties that give rise to allowing for any limited discovery while Defendants' Motion to Dismiss is pending.

    In *Wallin v. Shanaman*, 2009 U.S. Dist. LEXIS 1688 (D.Colo. Jan. 5, 2009), the court was asked to distinguish the holding in *Rome* as to whether discovery should proceed on injunctive issues.  The court held that the defendants' qualified immunity defense did not shield them from "discovery requests . . . relating to any claim for declaratory or injunctive relief." *Wallin*, 2009 U.S. Dist. LEXIS 1688, at *7.  Here, the Plaintiff seeks "damages for physical and

mental injuries sustained as the result of the medical negligence and inadequate medical treatment she received from named Defendants." [Doc. No. 1-2 at 4.]  In her "Prayer for Relief," Plaintiff asks for (1) judgment jointly and several against all Defendants on all claims; (2) monetary damages, including punitive damages, in an amount to be determined at trial; (3) an award of her attorneys' fees, costs, and expenses in bringing this lawsuit; and (4) all other relief that law and justice require. [doc. No. 1-2 at 15.] Plaintiff has not asserted any claims for declaratory or injunctive relief in Plaintiff's Complaint.  Thus, her reliance on *Wallin* is unpersuasive.

In *Estate of Sorrells v. City of Dallas*, 192 F.R.D. 203 (N.D. Tex. 2000), the court initially stayed all discovery at the request of defendants because they had raised the affirmative defense of qualified immunity in their answer.  *Estate of Sorrells*, 192 F.R.D. at 206.  The plaintiffs were subsequently allowed to file a motion for leave to conduct discovery only *after* the defendants filed a motion for summary judgment.  *Id.*  The court reasoned that it was inherently unfair that the defendants "first raised the issue [of qualified immunity] in a fact-intensive motion for summary judgment" and were denying "access to evidence solely within their control while using that same evidence against plaintiffs."  *Estate of Sorrells*, 192 F.R.D. at 209.  Here, the County Defendants have raised the issue of qualified immunity in a Motion to Dismiss and are not relying on factual material outside of the Complaint.

Finally, neither *Buckner v. City of Victoria*, 2008 U.S. Dist. LEXIS 66007 (S.D. Tex. Aug. 26, 2008) nor *Del A. v. Edwards*, 1988 U.S. Dist. LEXIS 1791 (E.D. La. March 4, 1988) are applicable to the Plaintiff's position.  In the former, neither a motion to dismiss nor a motion for summary judgment had been filed raising the issue of qualified immunity and all of the discovery allowed was unopposed.  *Buckner*, 2008 U.S. Dist. LEXIS 66007, at *4, 9-10.  In the

12

latter, the defendants had engaged in significant discovery, the plaintiffs had requested injunctive relief, and that court found that "the scope of discovery as to the injunctive claim is practically the same as that involved in proving damages." *Del A*., 1988 U.S. Dist. LEXIS 1791, at \*3. Here, the County Defendants have filed their Motion to Dismiss based in part on qualified immunity, the parties have not engaged in any discovery, no agreements with respect to discovery have been made by the parties, and the Plaintiff has not requested injunctive relief.

The cases cited to by Plaintiff are unpersuasive and inapposite.

### B.      Rule 56(d) Affidavit

Plaintiff also argues that "the Court may allow additional discovery upon the filing of an affidavit, pursuant to Fed. R. Civ. P. 56(d)" [Doc. No. 20 at 3.]  However, the Rule 56(d) Affidavit of Plaintiff's counsel attached to Plaintiffs' Response to Defendants' Motion to Stay [Doc. No. 20] is misplaced because the County Defendants have not filed a motion for summary and Plaintiff has not requested that their Motion to Dismiss be converted to a motion for summary judgment.  As discussed previously, a Rule 12(b)(6) motion does not properly challenge the evidence that may support a claim for relief, but is confined to the sufficiency of the allegations asserted in support of that claim and issues related to the evidence are not properly before the Court.  If a motion for summary judgment had been filed, the Tenth Circuit has stated that "A party seeking to defer a ruling on summary judgment under Rule 56[(d)] must 'file an affidavit that explain[s] why facts precluding summary judgment cannot be presented. This includes identifying the probable facts not available and what steps have been taken to obtain these facts.'" *Libertarian Party of NM v. Herrera*, 506 F.3d 1303, 1308 (10th Cir.2007) (quoting *Trask v. Franco*, 446 F.3d 1036, 1042 (10th Cir.2006)). However, no summary judgment motion has been filed here.  Furthermore, even if Plaintiff had requested that the

County Defendants' Motion to Dismiss be converted into a summary judgment, Plaintiff's Rule 56(d) affidavit is deficient, fails to comply with the *Ben Ezra* standards, and is insufficient to invoke the protections of Rule 56(d).

Plaintiff's counsel's affidavit explains that discovery is necessary for the following reasons. (1) Plaintiff has a "right to rebut" the County Defendants' assertion that Plaintiff's surgery could be rescheduled the next day and that there are more medical providers available to Plaintiff in Albuquerque.[4] [Doc. No. 20-1 at 1.] Plaintiff claims this rebuttal information can only be obtained through discovery of Defendants BCMDC, MCADC, CHC, and the individual Defendants. (2) Plaintiff states that the County Defendants' assertion that Plaintiff's claim of negligent hiring, training and supervision cannot be maintained against non-managerial personnel such as John/Jane Doe is speculative because it is unknown whether John and Jane Doe Defendants are managerial or not and that discovery is necessary to determine their status. [Doc. No. 20-1 at 2.] Plaintiff states that in any event, these claims can be and are being asserted against Defendant Henderson, who was the warden in charge of MCADC's facilities and operations. [Id.] (3) Plaintiff asserts that she is unable to show that the institution's policies caused the constitutional violation without access to said policies. [Doc. No. 20-1 at 2.] (4) Plaintiff contends that because Defendant Henderson was the warden in charge of MCADC's facilities and operations, she was a final decision maker regarding any failure on the part of BCMDC in providing medical care to the Plaintiff. [Id.] (5) Plaintiff argues that because

---

[4] The County Defendants assert that Plaintiff claims she broke her right humerus on October 14, 2010, and was taken by Emergency Medical Services to Indian Health Services in Gallup, New Mexico. Plaintiff was scheduled for surgery on Monday, October 18, 2010; however, Plaintiff was transferred to the Bernalillo County Metropolitan Detention Center the next day on October 15, 2010. [Doc. No. 17 at 2.] The County Defendants also assert that, "[T]here is no basis for asserting that a transfer to a similar institution in another County, in a greater metropolitan area, where there would obviously be greater availability of medical care, could possibly constitute a constitutional violation in this context." [Doc. No. 17 at 7.]

Defendant Henderson was the warden in charge of MCADC's facilities and operations, she played a role in the "decision complained of related thereto."  [Doc. No. 20-1 at 2.]

Plaintiff's discovery requests exemplify "the burdens of broad reaching discovery." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  Thus, even if Plaintiff's Rule 56(d) Affidavit were properly submitted, it is deficient and fails to comply with the *Ben Ezra* standards because it demonstrates no specific connection between the information Plaintiff seeks in discovery and the County Defendants' qualified immunity defense.  When a defendant asserts qualified immunity at summary judgment, the responsibility shifts to the plaintiff to meet a "heavy two-part burden."  *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001).  The plaintiff must demonstrate on the facts alleged that: (i) the defendant's actions violated his or her constitutional or statutory rights; and (ii) the right was clearly established at the time of the alleged unlawful activity.  *See Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009).  In evaluating whether the right was clearly established, the court considers whether the right was sufficiently clear that a reasonable government employee in the defendant's shoes would understand that she/he violated the right.  *See Casey v. W. Las Vegas Indep. Sch. Dist.*, 473 F.3d 1323, 1327 (10th Cir. 2007).  Here, instead of demonstrating with specificity how the requested discovery is linked to the validity of the qualified immunity defense, Plaintiff requests discovery that is exceedingly broad; *i.e.*, discovery of BCMDC, MCADC, CHC, and all of the individual Defendants, on issues of municipal liability[5] and state tort claims, and against those individuals who cannot assert qualified immunity.  The discovery requested is not limited to claims of qualified

---

[5]  The Tenth Circuit has explained that there are two elements that a plaintiff must show when "suing a county under section 1983 for the actions of one of its officers": (i) "a municipal employee committed a constitutional violation"; and (ii) "a municipal policy or custom was the moving force behind the constitutional deprivation."  *Myers v. Oklahoma Countu Bd. of County Comm'rs*, 151 F.3d 1313, 1318 (10th Cir. 1998) (*citing Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

immunity, but is limitless as to all of Plaintiff's claims alleged in this lawsuit.  The Rule 56(d)

affidavit is akin to a fishing expedition.

Discovery will be necessary at some point in the proceedings after the Court determines

whether the individuals are or are not entitled to qualified immunity.  However, the law is clear

that when a defendant files a motion for qualified immunity, the defendant is entitled to a stay of

discovery.

> Qualified immunity is "an entitled not to stand trial or face the other burdens of
> litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 91985).  The privilege "is an
> *immunity from suit* rather than a mere defense to liability; and like an absolute
> immunity, it is effectively lost if a case is erroneously permitted to go to trial."
> *Id.*  Accordingly, qualified immunity questions should be resolved at the earliest
> possible stage in litigation.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001) "[E]ven
> such pretrial matters as discovery are to avoided if possible, as inquires of this
> kind can be peculiarly disruptive of effective government."  *Mitchell*, 472 U.S. at
> 526 (internal quotations omitted).

*Jiron v. City of Lakewood*, 392 F.3d 410, 414 (10th Cir. 2004)(emphasis in original).

In *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009), the Supreme Court further clarified the

importance of staying discovery for all parties, once a defense of qualified immunity is raised.

> The basic thrust of the qualified-immunity doctrine is to free officials from the
> concerns of litigation, including "avoidance of disruptive discovery."  *Siegert v.
> Gilley*, 500 U.S. 226, 236 (1991) (Kennedy J. Concurring in judgment).  There are
> serious and legitimate reasons for this.  If a government official is free to devote time
> to his or her duties, and to the formulation of sound and responsible policies, it is
> counterproductive to require the substantial diversion that is attendant to
> participating in litigation and making informed decisions as to how it should
> proceed.  Litigation, though necessary to ensure that officials comply with the law,
> exacts heavy costs in terms of efficiency and expenditure of valuable time and
> resources that might otherwise be directed to the proper execution of the work of the
> government . . . .

*Iqbal*, 129 S.Ct. at 1953.

If the Court were to permit Plaintiff to proceed with discovery on the municipal claims

and state tort claims, or to proceed with discovery against those individuals who cannot assert

qualified immunity, the defendants who did assert qualified immunity would be dragged back into the fray.  They and their attorneys would have to monitor ongoing discovery, participate in depositions, and keep abreast of all discovery developments to ensure that "the case does not develop in a misleading or slanted way that causes prejudice to their position."  *Id*. at 1953.  In having to participate in discovery, the qualified immunity defendants would lose the very benefit of their immunity defense.

<u>**CONCLUSION**</u>

For the foregoing reasons, discovery in this case is stayed as to all Defendants pending the Court's ruling on Defendants' Motion to Dismiss Plaintiff's Complaint for Damages Due to Failure to Provide Medical Care and for Qualified Immunity and Memorandum in Support Thereof [Doc. No. 17].

**IT IS SO ORDERED.**

_____
**ALAN C. TORGERSON**
**United States Magistrate Judge**

17