IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SAMANTHA LEE,

      Plaintiff,

v.                                            No. 12-CV-1124 MCA/ACT

MCKINLEY COUNTY ADULT
DETENTION CENTER, et al.,

      Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on *McKinley County Defendants' Motion to Dismiss Plaintiff's Complaint for Damages due to Failure to Provide Medical Care and for Qualified Immunity and Memorandum in Support Thereof* [Doc. 17] and Plaintiff's *Opposed Motion for Leave of Court to Amend Complaint.* [Doc. 28]   Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court **GRANTS** Defendants' Motion to Dismiss and **DENIES** without prejudice Plaintiff's Motion for Leave to Amend.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On October 14, 2010, Plaintiff Samantha Lee broke her right humerus and was taken by EMS and McKinley County Sheriff's Deputies to Indian Health Services (IHS) in

1

Gallup, New Mexico.[1] [Doc. 9, ¶ 25] Due to the nature of the break, Plaintiff required surgery, which was scheduled by IHS for October 18, 2010. [Doc. 9, ¶ 26] On October 15, 2010, Plaintiff was transported from the IHS facility to the McKinley County Adult Detention Center (MCADC). [Doc. 9, ¶ 28]   Health care providers at the IHS facility provided copies of her medical paperwork, including documentation that she had surgery scheduled on October 18, 2010, to the corrections officer who transported Plaintiff to MCADC. [Doc. 9, ¶ 27] Nonetheless, within a few hours of her arrival at the MCADC, Plaintiff was transferred to the Bernalillo County Metropolitan Detention Center (BCMDC), over her protests and her need for the scheduled surgery. [Doc. 9, ¶ 28]

After Plaintiff was transferred to BCMDC, the staff there took away her pain medications. [Doc. 9, ¶ 31] BCMDC did not transport her to her scheduled surgery, and instead waited several days before administering an X-Ray, six days before having her seen by a doctor at BCMDC, and nearly two weeks before taking Plaintiff to an orthopedics clinic. [Doc. 9, ¶¶ 33, 38] By that time, she had developed complete nerve palsy and had been in "extreme and unimaginable pain for over two weeks." [Doc. 9, ¶ 39] Three months after her initial injury, Plaintiff finally underwent surgery, which

---

[1] Because the Court is addressing a motion to dismiss, the Court recites the facts alleged in Plaintiff's Complaint, taking them as true. The Court notes, however, the First Amended Complaint actually alleges Plaintiff broke her right humerus on October 14, 2012. [Doc. 9, ¶ 25] In the context of the rest of the dates as alleged in the Complaint, the Court believes this is a typographical error and Plaintiff actually broke her right humerus on October 14, 2010. [*See, e.g.,* Doc. 9, ¶¶ 26-29]

required the placement of numerous metal plates, screws and rods in her arm. [Doc. 9, ¶ 40] Then, in April of 2011, Plaintiff slipped on a wet floor at BCMDC and reinjured her arm. [Doc. 9, ¶ 41] Despite her complaints of a re-injury and that her arm was swollen and showing signs of a possible infection, X-Rays were not taken until two months later. [Doc. 9, ¶¶ 41-44]  The X-Rays did not show that the hardware had disengaged from Plaintiff's bone and was imbedded in her soft tissue. [Doc. 9, ¶ 44] Upon Plaintiff's release from BCMDC in August of 2011, she sought medical treatment and learned that the hardware had disengaged from the bone and she had severe infections which required months of oral and intravenously administered antibiotics.  [Doc. 9, ¶¶ 46, 49, 50] Plaintiff also required several additional surgeries to treat the infection and to attempt to repair the damage to her bone and tissue. [Doc. 9, ¶¶ 50, 51] Plaintiff now cannot lift anything with her arm, suffers from permanent nerve damage and is permanently disfigured. [Doc. 9, ¶¶ 52-54]

In addition to various entities and persons in Bernalillo County, Plaintiff brings this lawsuit against:  MCADC; Mabel Henderson, the Warden of MCADC in her individual capacity and as Warden; and John/Jane Doe I, a deputy sheriff of McKinley County in his or her official and individual capacity.  [Doc. 9, ¶¶ 3-11] As to MCADC, Plaintiff alleges that it "had a policy and practice of cutting costs by under staffing, providing inadequate training to its guards and other employees, as well as not providing adequate medical attention to its inmates, such as Plaintiff." [Doc. 9, ¶ 15] Plaintiff makes no specific

3

allegations against Mabel Henderson, such as her involvement in creating a policy, or any decision she made specifically regarding Plaintiff. [Doc. 9]   As to John/Jane Doe I, Plaintiff alleges that "Defendant John Doe I is an unknown person who, at all times relevant hereto, was a deputy sheriff and an employee of Defendant Board of Commissioners of McKinley County and was acting in the course and scope of his employment." [Doc. 9, ¶ 9] Plaintiff makes no factual allegations individually identifying what Defendant John Doe I did or did not do to Plaintiff giving rise to her claims.   [Doc. 9] However, Plaintiff makes several aggregated allegations against all Defendants, as well as aggregated claims against multiple John Does.[2]

To place the arguments of the parties in context, the Court will review Plaintiff's Complaint count-by-count.   Plaintiff makes no individualized reference to any MCADC employee in her first count, titled "First Claim for Relief (§1983 Eighth Amendment Violation-Failure to Provide Medical Care and Treatment.). [Doc. 9, ¶¶ 55-65] Instead, Plaintiff alleges that "Defendants knew of Plaintiff's serious medical condition. Nonetheless, with deliberate indifference . . . Defendants made no effort to obtain adequate and timely medical treatment for Plaintiff." [Doc. 9, ¶ 59] She further alleges that "Defendants had a custom, policy, or practice of acting knowingly and with deliberate indifference in denying obviously necessary medications, medical services, and

---

[2] Plaintiff also identifies John/Jane Doe II and III, who are allegedly employees of Defendants "CHC and or BCMDC." [Doc. 9, ¶¶ 10, 11]

hospitalizations to inmates at BCMDC/MCADC, including Plaintiff." [Doc. 9, ¶ 58] Plaintiff alleges no further facts relating to such a policy or procedure, such as past instances of denying obviously necessary medical needs or facts from which it could be inferred that a deliberate decision was made to be indifferent to those needs.

In Plaintiff's "Second Claim for Relief (1983 Eighth Amendment Violation-Failure to Train and Supervise Against Defendants)," Plaintiff alleges (in relevant part) that "Defendants knowingly hired individuals, including Defendants John/Jane Doe I and John/Jane Doe II, who did not possess the requisite training and experience to properly operate and administer the medical units at BCMDC and MCADC and respond appropriately to medical emergencies." [Doc. 9, ¶ 73]

In Plaintiff's "Third Claim for Relief (State Law Claim for Negligent Medical Care and Treatment Against All Defendants)," Plaintiff alleges that "All named Defendants breached their duty of care and were negligent when they failed to provide Plaintiff with reasonably obtainable and necessary medical care and follow-up medical treatment." [Doc. 9, ¶ 80] She further alleges that "Defendants John/Jane Doe I, John/Jane Doe II, [] and John/Jane Doe III acted on their own behalf and on behalf of Defendants when they committed the acts giving rise to the claims against them contained in this Complaint and which may later be learned of through discovery." [Doc. 9, ¶ 82]

In Plaintiff's "Fourth Claim for Relief (State Law Claim for Negligent Hiring, Training, and Supervision Against All Defendants)," Plaintiff alleges that "Defendants had

a duty to exercise reasonable care in the hiring, training, and supervision of its employees in a manner that provides the inmates under MCADC and BCMDC's care with reasonable medical care and treatment." [Doc. 9, ¶ 87] In the same Count, she alleges that "Defendants knew or should have known that the employees they hired, including Defendants John/Jane Doe I, John/Jane Doe II, and John/Jane Doe III, lacked adequate training and experience to provide BCMDC/MCADC inmates with reasonable medical care and treatment." [Doc. 9, ¶ 88]

Finally, in Plaintiff's "Fifth Claim for Relief (State Law Claim for Outrageous Conduct Against All Defendants)," Plaintiff alleges that "[t]he failure of Defendants John/Jane Doe I, John/Jane Doe II, and John/Jane Doe III to provide reasonable medical care and treatment to Plaintiff constituted omissions or acts of extreme and outrageous conduct." [Doc. 9, ¶ 93]

Defendants MCADC and Warden Henderson (hereafter, the McKinley County Defendants) now move to dismiss all counts against them for either failing to state a claim upon which relief can be granted under Federal Rule of Evidence 12(b)(6) or on the basis of qualified immunity. [Doc. 17, pp. 1-2] Among other arguments, the McKinley County Defendants argue that MCADC cannot be sued under Section 1983 [Doc. 17, n.1]; the McKinley County Defendants did not violate Plaintiff's constitutional rights [Doc. 17, p. 7]; Plaintiff's failure to identify the acts of each individual Defendant results in a failure to meet the requisite pleading standards [Doc. 17, p. 9]; even if Plaintiff has alleged a

constitutional violation, the McKinley County Defendants are entitled to qualified immunity [Doc. 17, pp. 10-13]; and the State of New Mexico has not waived immunity for the torts alleged by Plaintiff [Doc. 17, pp. 14-15].

Two months after briefing was complete on Defendant McKinley County's Motion to Dismiss, Plaintiff filed an *Opposed Motion for Leave of Court to Amend Complaint.* [Doc. 28] Plaintiff requests leave to amend her complaint to add claims against McKinley County Sheriff's Deputies Eric Jim and/or Eric Chee for "violation of Plaintiff's Fourth [and] Fourteenth [Amendment] rights as well as rights secured to Plaintiff under State law." [Doc. 28, ¶¶ 17, 18]   She claims that, through dispatch records received after Plaintiff filed her complaint, she learned that Deputy(ies) Jim and/or Chee were involved in her arrest and transport, ran a warrant check and learned she had an outstanding warrant in Bernalillo County for failure to appear in Court, and secured her extradition to BCMDC despite knowing that she had a severely broken arm and was scheduled for surgery. [Doc. 28, ¶¶ 4-7]   Plaintiff further claims that Deputies Jim and/or Chee "never checked to see if she would be able to secure prompt medical attention once in Bernalillo County" and "did not check with her medical providers at IHS to see if transport to Bernalillo County in her condition was safe or whether delay in her treatment would cause her greater injury." [Doc. 28, ¶¶ 8, 9] Plaintiff did not attach a copy of her Proposed Amended Complaint to her Motion for Leave to Amend her Complaint.   [Doc. 28]   The McKinley County Defendants oppose Plaintiff's Motion to Amend her Complaint because she has already

amended her complaint twice, she "provides no explanation whatsoever for the undue delay," she did not attach the proposed amended complaint to her motion and amendment would be futile. [Doc. 30, pp. 1-2] In reply, Plaintiff's attorney asserts that she did not receive the requested dispatch records until mid-March 2013, she went on vacation around the same time through the end of March, she circulated the proposed motion and amended complaint for approval on April 17, 2013 and she filed the Motion to Amend on April 23, 2013. [Doc. 31, p. 1-2] She argues that amendment would not be futile and that the briefing on the motion to dismiss does not address Deputies Jim and Chee. [Doc. 31, pp. 2-3] She attached a copy of her email circulating the proposed motion, order and amended complaint and the Proposed Amended Complaint to her Reply. [Docs. 31-1; 31-3]

## II.   GENERAL LEGAL STANDARDS

### A.   Rule 12(b)(6) Standard

Under Rule 12(b)(6), a court will dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  For decades, Rule 12(b)(6) motions were governed by a test taken from *Conley v. Gibson*, 355 U.S. 41 (1957):  a complaint was subject to dismissal pursuant to Rule 12(b)(6) only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Conley*, 355 U.S. at 45-46) (internal quotation marks omitted). In *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), the Court retired *Conley*'s test,

8

replacing it with a new standard:  "to withstand a motion to dismiss, a complaint must have enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Collins*, 656 F.3d at 1214 (quoting *Twombly*, 550 U.S. at 570)). In applying this standard, a court accepts as true all "plausible, non-conclusory, and non-speculative" facts alleged in the plaintiff's complaint. *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011) (internal quotation marks and citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, "'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim" that "'raise a right to relief above the speculative level.'"  *Collins*, 656 F.3d at 1214 (quoting *Twombly*, 550 U.S. at 555).   In short, in ruling on a 12(b)(6) motion, "a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Collins*, 656 F.3d at 1214.

"[A] party not properly named in the caption of a complaint may still be properly before the court if the allegations in the body of the complaint make it plain the party is intended as a defendant; merely naming a party in a brief, however, does not provide adequate notice." *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996).  "[T]he burden rests on the plaintiffs to provide fair notice of the grounds for the claims made against each of the defendants." *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir.

9

2008).

> In § 1983 cases, defendants often include the government agency and a number of government actors sued in their individual capacities. Therefore it is particularly important in such circumstances that the complaint make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state.

*Id.* at 1249-50.   On the other hand, even where a complaint pleads allegations against defendants collectively, if the allegations are sufficiently clear that "there is no confusion as to whom the allegation is asserted against[,]" then the Plaintiff has provided fair notice to the defendants of the claims against them.   *Briggs v. Johnson*, 274 Fed. Appx. 730, 736 (10th Cir. 2008) (unpublished decision).

### B.      Section 1983 Liability and Qualified Immunity

"Every person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law[.]"   42 U.S.C. § 1983.

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."   *Dodds v. Richardson*, 614 F.3d 1185, 1191 (10th Cir. 2010) (internal quotation marks and citations omitted).

10

> Resolution of a dispositive motion based on qualified immunity involves a two-pronged inquiry. First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second, the court must decide whether the right at issue was clearly established at the time of the defendant's alleged misconduct.  With regard to this second prong, the relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful under the circumstances presented. A reviewing court may exercise its sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.   Qualified immunity is applicable unless the plaintiff can satisfy both prongs of the inquiry.

*Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009) (internal quotation marks, brackets, ellipses, and citations omitted).

"The defense of qualified immunity is not available to a municipality." *Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1278 (10th Cir. 2009).  Such governmental bodies may be held liable where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."  *Monell v. Dep't of Soc. Servs*, 436 U.S. 658, 690 (1978).  "[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986).

Similarly, Section 1983 "does not recognize a concept of strict supervisor liability."

11

*Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008). "[W]hen a plaintiff sues an official under . . . § 1983 for conduct 'arising from his or her superintendent responsibilities,' the plaintiff must plausibly plead and eventually prove not only [1] that the official's subordinates violated the Constitution, but [2] that the official by virtue of his own conduct and state of mind did so as well."   *Dodds,* 614 F.3d at 1198 (quoting *Iqbal*, 556 U.S. at 677).

> A plaintiff may therefore succeed in a § 1983 suit against a defendant-supervisor by demonstrating: (1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation.

*Id.* at 1199.

> Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law.   Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent.   As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.

> . . .

> On the merits, to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right.   More is required in an official-capacity action, however, for a governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation; thus, in an official-capacity suit the entity's "policy or custom" must have played a part in the violation of federal law.

*Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (internal quotation marks and citations

omitted).

"Generally, governmental sub-units are not separate suable entities that may be sued under § 1983." *Hinton v. Dennis*, 362 Fed.Appx. 904, 907 (10th Cir. 2010) (unpublished decision) (citing *Martinez v. Winner*, 771 F.2d 424, 444 (10th Cir.1985)) (holding county detention center was not separate suable entity).

### C.     Leave to Amend a Complaint

A complaint may be amended "once as a matter of course" within "21 days after service of a motion under Rule 12(b), (e), or (f)." Fed. R. Civ. P. 15(a)(1)(B).   Thereafter, amendment requires leave of the Court or written consent of the adverse party.   Fed. R. Civ. P. 15(a)(2).   Such leave shall be freely given "when justice so requires."   *Id.*   It is within the Court's discretion, however, to deny leave to amend a pleading under Rule 15(a) based upon reasons such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *accord Hom v. Squire*, 81 F.3d 969, 973 (10th Cir. 1996). A motion to amend a complaint is futile if, notwithstanding the amendment, the complaint "would be subject to dismissal." *Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999).

## III.     SECTION 1983 - FAILURE TO PROVIDE ADEQUATE MEDICAL CARE

### A.     Legal Standard

13

The Eighth and Fourteenth Amendments require the government to provide adequate medical care for incarcerated individuals.  *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).

> In the worst cases, [the failure to provide medical care] may actually produce physical torture or a lingering death, the evils of most immediate concern to the drafters of the Amendment. In less serious cases, denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose. The infliction of such unnecessary suffering is inconsistent with contemporary standards of decency as manifested in modern legislation codifying the common-law view that it is but just that the public be required to care for the prisoner, who cannot by reason of the deprivation of his liberty, care for himself.

*Id.* at 103-04 (internal quotation marks, citations, footnotes and alterations omitted).

"A claim for inadequate medical attention will be successful if the plaintiff shows deliberate indifference to serious medical needs.  The Supreme Court cautioned that an inadvertent failure to provide adequate medical care does not rise to a constitutional violation."  *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009) (internal quotation marks and citations omitted).   However, the Eighth Amendment forbids intentionally or by deliberate indifference denying or delaying access to medical care or interfering with a treatment once it is prescribed.  *Estelle*, 429 U.S. at 104-05.  Further, "while not every twinge of pain suffered as the result of delay in medical care is actionable," the "Eighth Amendment forbids unnecessary and wanton infliction of pain."  *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000) (emphasis added; internal quotation marks omitted) (holding that delay of treatment for 36 hours while plaintiff was suffering "severe chest

14

pain" from heart attack was actionable under the Eighth Amendment) (citing *Jones v. Johnson*, 781 F.2d 769 (9th Cir. 1986) (holding that pain and suffering and inability to work resulting from untreated hernia, for which surgery had been scheduled prior to the plaintiff's incarceration, established a serious medical need under the Fourteenth Amendment)).

"The test for deliberate indifference is both objective and subjective.   The objective component of the test is met if the harm suffered rises to a level sufficiently serious to be cognizable under the Cruel and Unusual Punishment Clause." *Martinez*, 563 F.3d at 1088 (internal quotation marks and citation omitted).   A medical need is "sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (internal quotation marks and citation omitted).   Delay in medical care is only violative of the Eighth Amendment where the plaintiff suffered substantial harm, which can "be satisfied by lifelong handicap, permanent loss, or considerable pain." *Id.* (internal quotation marks and citations omitted).   "Delays that courts have found to violate the Eighth Amendment have frequently involved life-threatening situations and instances in which it is apparent that delay would exacerbate the prisoner's medical problems." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (internal quotation marks and citation omitted).

"To prevail on the subjective component, the prisoner must show that the

defendants knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Martinez*, 563 F.3d at 1089 (internal quotation marks and citation omitted).  "The question is: were the symptoms such that a prison employee knew the risk to the prisoner and chose (recklessly) to disregard it?" *Id.* (internal quotation marks and citation omitted).

### B.    Analysis

#### i.    *Claims Against MCADC*

As stated above, a governmental sub-unit is not a suable entity, and thus Plaintiff's claims against MCADC fail.  *Hinton*, 362 Fed.Appx. at 907.  Plaintiff designates a portion of her Complaint to identifying the parties, in which she designates "McKinley County Adult Detention Center" as a Defendant.  [Doc. 9, ¶ 3]  The caption of Plaintiff's complaint does not name the Board of Commissioners of McKinley County as a Defendant, but rather names the McKinley County Adult Detention Center. [Doc. 9]  The remaining allegations refer to MCADC and not to the Board of Commissioners of McKinley County. [*See, e.g.,* Doc. 9, ¶¶ 16, 70, 79] However, the Complaint states:  "At all times material hereto McKinley County was responsible for the operation and management of MCADC."  [Doc. 9, ¶ 3] Further, Plaintiff's Complaint alleges that Defendant John Doe I is a deputy sheriff and an employee of "Defendant Board of Commissioners of McKinley County." [Doc. 9, ¶ 9] The Court concludes that these two allegations are sufficient to notify the Board of Commissioners of McKinley County of

16

Plaintiff's claims against it. *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996) ("[A] party not properly named in the caption of a complaint may still be properly before the court if the allegations in the body of the complaint make it plain the party is intended as a defendant.").

McKinley County is not entitled to qualified immunity. *Christensen*, 554 F.3d at 1278.  However, to state a claim under Section 1983 against McKinley County, Plaintiff must allege *facts* which, when taken as true, establish that the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflict[ed] the injury." *Monell*, 436 U.S. at 694; *see Iqbal*, 556 U.S. at 681 (refusing to consider conclusory allegations and considering only whether the well-pleaded factual allegations plausibly suggested entitlement to relief).   As to a policy or custom, Plaintiff alleges that "MCADC had a policy and practice of cutting costs by under staffing, providing inadequate training to its guards and other employees, as well as not providing adequate medical attention to its inmates, such as Plaintiff." [Doc. 9, ¶ 15] She further alleges "Defendants had a custom, policy or practice of acting knowingly and with deliberate indifference in denying obviously necessary medications, medical services, and hospitalizations to inmates at BCMDC/MCADC, including Plaintiff." [Doc. 9, ¶ 58]

The Court concludes that these allegations are a bare and conclusory "formulaic recitation of the elements" of municipal liability. *Iqbal*, 556 U.S. at 681 (internal

quotation marks and citation omitted).  Plaintiff nowhere identifies other instances of violation of inmates' constitutional rights to adequate medical care.  *Compare Wilson v. Montano*, 715 F.3d 847, 851 n. 3, 857-58 (10th Cir. 2013) (holding the plaintiff had met *Iqbal*'s pleading standard where the plaintiff alleged that supervisory defendants established a policy or custom of detaining citizens without filing charges and where six plaintiff's cases based on the same allegations were consolidated).  Plaintiff has not alleged facts which state a claim of municipal liability as against McKinley County, and thus, the claims against McKinley County will be dismissed.

### ii.    *John Doe I*

Plaintiff does not allege any specific acts by Defendant John Doe I, a sheriff of McKinley County, which she claims violated her constitutional rights.  Further, as the Complaint is written, the identity of John Doe I is a moving target.  First, Plaintiff identifies John Doe I as a McKinley County Sheriff's Deputy.  [Doc. 9, ¶ 9]  However, later, Plaintiff alleges that John Doe I "operate[d] and administer[ed] the medical unit[] at . . . MCADC." [Doc. 9, ¶ 73]  These two allegations are irreconcilable.  Given the inconsistent allegations about what John Doe I did and who John Doe I was (or what his duties were and who his employer was), the Court must conclude that Plaintiff's complaint fails to state a claim against John Doe I.  [*See* Doc. 9, ¶¶ 25-28]  *Compare Erickson*, 551 U.S. at 92-93 (holding that plaintiff stated a claim for violation of his Eighth Amendment rights where he "alleged Dr. Bloor had removed him from his hepatitis C treatment . . .

18

endangering his life." (internal quotation marks, citation and brackets omitted)).

Additionally, the Court notes that Plaintiff's Response brief adds to the confusion rather than clarifies it.  [Doc. 23]  In her response brief, Plaintiff submits that she has identified Sheriff Deputies Eric Jim and/or Eric Chee as the deputies who were given copies of her medical paperwork at IHS, who transported Plaintiff from IHS to MCADC and who then discovered she had an outstanding warrant in Bernalillo County and placed her under arrest despite her medical condition. [Doc. 23, pp. 4-5] Yet, she then argues "The John/Jane Doe Defendants . . . are the persons who arrested, detained, transported, booked, and otherwise personally dealt with Ms. Lee while at MCADC[.]" [Doc. 23, p. 10] Thereafter, Plaintiff shifts focus to the booking agent, but never makes it clear that the booking agent is the John Doe she is intending to sue. [*See* Doc. 23, pp. 9-10 ("Clearly, in this case the booking officer at MCADC knew about Plaintiff's injury . . . but due to the fact that this person's name is not able to be ascertained from his/her signature more discovery must be done.")] At the least, Plaintiff's complaint must state "exactly *who* is alleged to have done *what to whom*, to provide each individual with fair notice as to the basis of the claims against him or her."  *Wilson*, 715 F.3d at 852 (emphasis in original) (internal quotation marks and citation omitted).  Given Plaintiff's failure to sufficiently identify John Doe I and to state what John Doe I did or did not do to Plaintiff giving rise to her claim, the Court concludes that Plaintiff has failed to state a claim against John Doe I.

### iii.      *Warden Henderson*

19

Next, the Court considers the claims against Warden Mabel Henderson.  To establish supervisor liability, "the plaintiff must plausibly plead and eventually prove not only [1] that the official's subordinates violated the Constitution, but [2] that the official by virtue of his own conduct and state of mind did so as well."  *Dodds*, 614 F.3d at 1198. Though the Court has held that Plaintiff's inconsistent allegations as to the identity of John Doe I fail to sufficiently identify John Doe I, it does not follow, *ipso facto*, that Plaintiff has failed to plead that one of Ms. Henderson's subordinates violated the Constitution.

Plaintiff's factual allegations must state a claim that a subordinate under Warden Henderson violated Plaintiff's constitutional right to adequate medical care, applying the objective and subjective tests set forth above.  Here, Plaintiff alleges: "Health care providers at IHS provided copies of her medical paperwork, including but not limited to paperwork concerning her surgery scheduled for October 18, 2010, to the corrections officer who then transported Plaintiff back to MCADC."  [Doc. 9,¶ 27] This factually specific allegation clearly states that an MCADC employee had knowledge that Plaintiff had a serious medical need, which had been diagnosed by a physician, and the scheduled surgery made it "so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Mata*, 427 F.3d at 751.  Plaintiff further alleges that she suffered from extreme pain, that she suffered nerve palsy, and that she is now permanently disfigured and unable to lift anything with her arm. [Doc. 9, ¶¶ 30, 39, 52-54]   Plaintiff's allegations objectively state a claim that an employee of McKinley County knew that

Plaintiff had a serious medical condition which it failed to treat.

As to the subjective component of the test, Plaintiff alleges: "On October 15, 2010, Plaintiff was transported from IHS to MCADC and booked into McKinley County Adult Detention Center.   Within a few hours Plaintiff was transferred, despite Plaintiff's protest and the emergent need for and scheduled surgery, to the Bernalillo County Metropolitan Detention Center."   [Doc. 9, ¶ 28] This allegation sufficiently claims that an employee of MCADC "knew [Plaintiff] faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Martinez*, 563 F.3d at 1089 (internal quotation marks and citation omitted).   One or more employees of MCADC knew Plaintiff was scheduled for (and thus, a physician determined she needed) surgery, and, granting all reasonable inferences to Plaintiff, it is a logical inference that the employee knew that the transfer from MCADC to BCMDC, over 100 miles away, would result in Plaintiff not receiving the scheduled surgery.   Granting all reasonable inferences from the facts as alleged, as required by *Twombly*, the Court must infer that an employee of MCADC knew that Plaintiff would face substantial risk of pain and exacerbation of her injury by being transferred to BCMDC prior to her scheduled surgery.   *See Sealock*, 218 F.3d at 1210-11 (holding that the plaintiff established that defendant disregarded the risk to the plaintiff's health from a delay of medical treatment); *see also Clemmons v. Bohannon,* 956 F.2d 1523, 1527 (10th Cir. 1992) (citing various cases determining that broken bones, generally with additional damage such as rendering the limb useless, are serious medical

21

needs).   Thus, Plaintiff has alleged that at least one of Warden Henderson's subordinates, the individual responsible for transferring Plaintiff, violated her constitutional rights.

However, to state a claim against Warden Henderson, Plaintiff must also allege that she, "by virtue of [her] own conduct and state of mind[,]" also violated Plaintiff's rights. *Dodds*, 614 F.3d at 1198.   With respect to this second prong of supervisor liability, Plaintiff's complaint fails to meet the pleading standards of *Iqbal*.   Plaintiff's only allegation referring to Warden Henderson by name or title states: "At all times material here to Defendant Mabel Henderson was the warden in charge of MCADC's facilities and operations." [Doc. 9, ¶ 4]   Construing the allegations in the complaint in the light most favorable to Plaintiff, the Court will read her allegations that "MCADC had a policy and practice of cutting costs by under staffing, providing inadequate training to its guards and other employees, as well as not providing adequate medical attention to its inmates, such as Plaintiff," to incorporate the same allegation as to Warden Henderson. [Doc. 9, ¶ 15] However, under *Iqbal*, the Court must conclude that this claim is conclusory, and is not entitled to be presumed to be true.   *See Iqbal*, 556 U.S. at 680-81 (holding that allegations that cabinet level governmental employees were the "principal architect of" and "instrumental in the adoption" of a policy to subject Muslims to harsh conditions of confinement were conclusory and a "formulaic recitation of the elements" of the plaintiff's claim).   Thus, Plaintiff has failed to state a claim for constitutionally inadequate medical care against Warden Henderson.   *Dodds*, 614 F.3d at 1198.

## IV.   SECTION 1983 - NEGLIGENT TRAINING AND SUPERVISION

### A.   Legal Standard

"Plaintiffs who seek to impose liability on local governments under § 1983 must prove that action pursuant to official municipal policy caused their injury." *Connick v. Thompson*, 131 S.Ct. 1350, 1359 (2011) (internal quotation marks and citation omitted). "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Id.*   "In the context of a claim for failure to train, proof is required that the municipality was deliberately indifferent to its inhabitants." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998).

> [W]hen city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program. The city's policy of inaction in light of notice that its program will cause constitutional violations is the functional equivalent of a decision by the city itself to violate the Constitution.

*Connick*, 131 S.Ct. at 1360 (internal quotation marks and citation omitted).   Generally, the notice to the municipality must be shown by "a pattern of similar constitutional violations by untrained employees." *Id.*   "Policymakers' continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the deliberate indifference—necessary to trigger municipal liability." *Id.* (internal quotation marks and

citation omitted).

**B.    Analysis**

Plaintiff fails to sufficiently state a claim against any of the McKinley County Defendants for negligent supervision and training.  First, in several key paragraphs, Plaintiff again pleads against the defendants in the plural, grouping together the John Does, the Wardens, BCMCD, MCADC and CHC.  "Given the complaint's use of . . . the collective term 'Defendants' . . . but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed."  *Robbins*, 519 F.3d at 1250. Plaintiff's allegations against all the Defendants in the aggregate also fail to recognize that the John Does, to the extent they are identified, are not alleged to be supervisors or otherwise have the authority to hire, train and supervise, and thus this Count cannot survive against the non-supervisory employees.

Second, to the extent Plaintiff makes allegations against the McKinley County Defendants, they are, again "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," and thus are not entitled to a presumption of truth.  *Iqbal*, 556 U.S. at 678.  For example, Plaintiff alleges: "Defendants failed to adequately train, supervise, and or/terminate the employment of Defendants John/Jane Doe II and John/Jane Doe III even though they knew, or had reason to know, that their failure to adequately administer the BCMDC and MCADC medical units and provide adequate

24

medical care to inmates was likely to be the cause of the deprivation of an inmate's Eighth Amendment rights."[3] [Doc. 9, ¶ 72] Such non-specific allegations are insufficient.   *Id.*

Third, nowhere in the complaint are there any well-pleaded facts which allege or give rise to an inference that Plaintiff had contact with the MCADC medical unit.   Nor are there factual allegations in the complaint which establish that an MCADC employee had previously committed a pattern of torts in operating the MCADC medical unit and that any supervisor was aware of a pattern of such tortious conduct yet continued to employ insufficient training.   Thus, Plaintiff has alleged no prior constitutional violations which would have put the McKinley County Defendants on notice of constitutional violation, or facts as to the policies and training which the McKinley Defendants employed showing that the McKinley Defendants continued to adhere to an approach that they know or should know has failed to prevent tortious conduct by employees.

In sum, Plaintiff has failed to meet the *Iqbal* pleading requirements to state a claim against the McKinley County Defendants for negligent training and supervision.

---

[3]  Further, John Does II and III are alleged to be employees of Bernalillo County or CHC, not McKinley County.   [Doc. 9, ¶¶ 10, 11]

## V.        STATE LAW TORT CLAIMS

Plaintiff brings three claims against all Defendants under New Mexico law.   First, she alleges that "All named Defendants herein had a duty to provide reasonable medical care and treatment to inmates at BCMDC and MCADC," and that all Defendants breached this duty by failing "to provide Plaintiff with reasonably obtainable and necessary medical care and follow-up medical treatment." [Doc. 9, ¶¶ 79-80] Next, she alleges that all "Defendants had a duty to exercise reasonable care in the hiring, training, and supervision of its employees in an manner that provided the inmates under MCADC and BCMDC's care with reasonable medical care and treatment[,]" and that Defendants breached that duty. [Doc. 9, ¶¶ 87-88]   Finally, she alleges that "[T]he failure of Defendants John/Jane Doe I, John/Jane Doe II, and John/Jane Doe III to provide reasonable medical care and treatment to Plaintiff constituted omissions or acts of extreme and outrageous conduct." [Doc. 9, ¶ 93]

The New Mexico "Tort Claims Act shields both governmental entities and public employees from liability for torts except when immunity is specifically waived in the Act. If a public employee, while acting in the scope of duty, commits a tort falling within one of the waivers, the entity which employs him is liable." *Abalos v. Bernalillo Cnty. Dist. Atty's Office*, 734 P.2d 794, 797 (N.M. App. 1987) (internal quotation marks and citations omitted).   Plaintiff alleges that the State of New Mexico has waived immunity for her State law claims through "sections 41-4-6 (operation of a building); 41-4-9 (operation of

'clinic, dispensary, infirmary or like facility') and 41-4-12 (deprivation of rights under state and federal constitution[)] and a violation of NMSA § 27-7-30 (duty to report neglect) and NMSA Section 24-10B-8 and 24-10B-5." [Doc. 9, ¶ 13]  The McKinley County Defendants argue that none of the waivers in the New Mexico Tort Claims Act apply in this case.  [Doc. 17, pp. 14-16]

In her response to the McKinley County Defendants' Motion to Dismiss, Plaintiff does not set out any argument or authority addressing why a particular waiver of immunity applies under New Mexico law.  [*See* Doc. 23, p. 17]  Instead, Plaintiff discusses New Mexico tort law relating to suits against entities other than the State of New Mexico, citing, *inter alia*, *Coffey v. United States*, 870 F.Supp.2d. 1202, 1219 (D.N.M. 2012) (addressing a claim brought under the Federal Tort Claims Act, which waives liability, in pertinent part, for "personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government . . . if a *private person*[] would be held liable" (emphasis added; internal quotation marks and citation omitted)) and *Herrera v. Quality Pontiac*, 73 P.3d 181, 184-85 (N.M. 2003) (addressing negligence claim against non-governmental entity).  Neither of these cases address Defendants' argument that New Mexico has not waived liability.  Moreover, a cursory look at the waivers in the New Mexico Tort Claims Act, and case law thereunder, warrants the conclusion that New Mexico has not waived liability for Plaintiff's claims as alleged.

A.    Section 41-4-6

27

N.M.S.A. 1978, § 41-4-6 (2007) waives immunity "for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any building, public park, machinery, equipment or furnishings."   The New Mexico Supreme Court recently stated that "the waiver of liability in Section 41–4–6(A) incorporates the concepts of premises liability found in our case law." *Encinias v. Whitener Law Firm, P.A.*, 310 P.3d 611, 616 (N.M. 2013).

In *Upton v. Clovis Municipal School District*, 141 P.3d 1259, 1261 (N.M. 2006), the New Mexico Supreme Court stated:   "The waiver applies to more than the operation or maintenance of the physical aspects of the building, and includes safety policies necessary to protect the people who use the building."   However, this statement is not so broad as to include the facts of this case.   Rather, this case is akin to *Lessen v. City of Albuquerque*, 187 P.3d 179, 180 (N.M. App. 2008), in which an inmate was released from a detention center to be transported to downtown Albuquerque, but instead left the transport van and walk into the desert, where he died of hypothermia.   *Lessen* pointed out that, in order for *Upton* to apply, the State must create a danger which poses a potential threat to all persons similarly situated to the injured.   *Id.* at 184.   Here, ignoring Plaintiff's conclusory allegations, Plaintiff has made no allegations that the McKinley County Defendants created a danger to all similarly situated inmates, or refused to address a pattern of failing to timely provide medical care.   *See also Encinias*, 310 P.3d at 616-18 ("While one

28

student's battery of another would not generally waive a school's immunity under Section 41-4-6(A), a school's failure to address a pattern of student violence in a particular area might create an unsafe condition on the premises."). Thus, Plaintiff has failed to plead a cause of action against the McKinley County Defendants for which immunity has been waived under Section 41-4-6.

### B.     Section 41-4-9

New Mexico has waived immunity for claims "for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation of any hospital, infirmary, mental institution, clinic, dispensary, medical care home or like facilities." N.M.S.A. 1978, § 41-4-9 (1977). Plaintiff did not allege that she had any contact with a clinic, dispensary, infirmary or like facility within MCADC. Nor does she allege any tortious conduct by employees of a clinic, dispensary, infirmary or like facility in McKinley County. Thus, Plaintiff does not state a claim for which immunity has been waived by Section 41-4-9.

### C.     Section 41-4-12

The immunity granted pursuant to Subsection A of Section 41-4-4 NMSA 1978 does not apply to liability for personal injury, bodily injury, wrongful death or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties.

29

N.M.S.A. 1978, § 41-1-12.

New Mexico has construed "law enforcement officer" to include jailers. *Methola v. Eddy County*, 622 P.2d 234, 237 (N.M. 1980) (holding that the jailers at the Bernalillo County jail were law enforcement officers under New Mexico Tort Claims Act definition); *Abalos,* 734 P.2d at 800 (holding that director of Bernalillo County jail was law enforcement officer).   While the duties of the individual must be compared to the statutory definition of "law enforcement officer," *see id.*, the Court will assume Plaintiff has stated a claim that the individuals at MCADC fall into the category of jailers.   However, the only wrongful acts which Plaintiff pleads as the basis for her state tort claims are her constitutional claims based on inadequate medical care and insufficient training and supervision, as well as a claim for "outrageous conduct."   As stated above, Plaintiff has failed to state a claim against the McKinley County Defendants for the failure to provide adequate medical care and negligent training and supervision.  *See Lessen*, 187 P.3d at 187-88 (refusing to recognize a cause of action under Section 42-4-12 for "negligent deprivation of substantive due process" because negligence is insufficient to establish constitutionally inadequate medical care).

As to Plaintiff's Count entitled "State law Claim for Outrageous Conduct," although "outrageous conduct" is not a tort under New Mexico law, in tort cases New Mexico "permits punitive damages where appropriate to punish outrageous conduct and to deter similar conduct in the future."  *Akins v. United Steel Workers, Local 187*, 237 P.3d 744,

746 (N.M. 2010).   This rule, however, does not apply to torts committed by State actors, because under the Tort claims Act "[n]o judgment against a governmental entity or public employee for any tort for which immunity has been waived under the Tort Claims Act shall include an award for exemplary or punitive damages or for interest prior to judgment." N.M.S.A. 1978 § 41-4-19(D) (2008).   Thus, Plaintiff has not stated a claim against the McKinley County Defendants for which liability has been waived under Section 41-4-12.

### D.      Section 27-7-30

Plaintiff's Complaint asserts that liability is waived pursuant to N.M.S.A. 1978, § 27-7-30(A) (2007), which states:   "Any person, including financial institutions, having reasonable cause to believe that an incapacitated adult is being abused, neglected or exploited shall immediately report that information to the [aging and long-term services] department."   An "incapacitated adult" is defined as "any adult with a mental, physical or developmental condition that substantially impairs the adult's ability to provide adequately for the adult's own care or protection."   N.M.S.A. 1978, § 27-7-16(L) (2007).   Even considering Plaintiff's allegations that her arm was broken, Plaintiff has not alleged that she was incapacitated adult due to mental, physical or developmental condition (her incarceration is not an incapacitating condition under this statute).

Moreover, the State of New Mexico has not waived liability through Section 27-7-30.   This Section does not expressly waive immunity for suit for government actors. *Id.*   Instead, it provides for (1) criminal penalties for the failure to report abuse or neglect;

(2) a civil fine; and (3), for certain state government employees, the department will "refer the matter to the agency employing the person for disciplinary action."   Section 27-7-30(C), (D).   Thus, while Section 27-7-30 creates a duty for individuals to report the abuse and neglect of incapacitated adults, it does not create "any rights, privileges or immunities secured by the constitution and laws of . . . New Mexico[.]" Section 41-4-12. In sum, Plaintiff's claim must be dismissed because:

> [T]he legislature recognizes that while a private party may readily be held liable for his torts within the chosen ambit of his activity, the area within which the government has the power to act for the public good is almost without limit, and therefore government should not have the duty to do everything that might be done. Consequently, it is declared to be the public policy of New Mexico that governmental entities and public employees shall only be liable within the limitations of the Tort Claims Act and in accordance with the principles established in that act.

N.M.S.A. 1978, § 41-4-2(A) (1976).

### E.      Sections 24-10B-5 and 24-10B-8

Finally, Plaintiff has pleaded that the State of New Mexico waived immunity from suit under the "Emergency Medical Services Act," specifically N.M.S.A. 1978, §§ 24-10B-5 and 24-10B-8.   Section 24-10B-8 states:

> In any claim for civil damages arising out of the provision of emergency medical services by personnel described in Section 24-10B-5 NMSA 1978, those personnel shall be considered health care providers for purposes of the Tort Claims Act if the claim is against a governmental entity or a public employee as defined by that act.

(footnote omitted).   Section 24-10B-5(A) states that the Department of Health shall adopt licensure requirements for "all persons who provide emergency medical services within

the state."   However, Plaintiff's complaint does not contain any allegation that a licensed

provider of emergency medical services committed a tort against her.   As to McKinley

County, again, the only individuals (or positions) Plaintiff identifies as potential tortfeasors

are the Warden, one or more Sheriff's Deputies, and the medical director.   [Doc. 9, ¶¶ 4, 9,

27, 28, 73, 80, 82]   Thus, as against the McKinley County Defendants, Plaintiff has not

stated any well-pleaded facts that the State of New Mexico has waived liability under the

Emergency Medical Services Act.

## VI.   PLAINTIFF'S MOTION TO AMEND HER COMPLAINT

Plaintiff has filed a Motion for Leave to Amend her Complaint.[4]   However, the

Proposed Amended Complaint [Doc. 31-3][5] does not cure the deficiencies in Plaintiff's

First Amended Complaint against any of the McKinley County Defendants.   [Doc. 9]

The most significant failings, with regard to all Counts, are that Plaintiff fails to clearly

identify who did what to whom, and she continues to plead against all Defendants

collectively.   Without clarifying the actions taken by each party, and the individual basis

of liability based upon those actions, Plaintiff has failed to notify the McKinley County

---

4 Plaintiff did not move to amend her complaint within the 21 days of Defendants' Motion
to Dismiss allowed by Rule 15(a)(1)(B).

5 Plaintiff failed to comply with District of New Mexico Local Rule of Civil Procedure
15.1, which states that "A proposed amendment to a pleading must accompany the motion
to amend."   The purpose of D.N.M.LR-Civ. 15.1 is to allow the Defendant an opportunity
to respond to the proposed amended complaint, which opportunity is foreclosed by the
attachment to the reply.

Defendants of their alleged wrongful actions upon which she intends to hold such party liable.   As in *Robbins*, the failure to individually identify the diverse defendants, and plead who did what to whom, is fatal to Plaintiff's claims against the McKinley County Defendants.   *See Robbins*, 519 F.3d at 1250 ("Presumably, the allegedly tortious acts committed by Mr. Hendrick as the Director of DHS, Ms. McKinney as the private owner and operator of the daycare where Renee was killed, and the individual social workers in Tahlequah, are entirely different in character and therefore are mistakenly grouped in a single allegation. The complaint makes no mention of which if any of these defendants had direct contact with Renee and her parents, and for those defendants who had no direct contact, how they might be individually liable for deprivations of Renee's constitutional rights.").

The Proposed Amended Complaint does not correct other deficiencies as well. While Plaintiff removed her allegation as to the identity and job title of John Doe I and replaced it with allegations as to the identity of Deputies Eric Jim and Eric Chee, she continues to refer to an unidentified John Doe I later Complaint. [Doc. 31-3, ¶¶9, 10, 60-103, esp. ¶ 73] Further, as to Warden Henderson, Plaintiff has not identified either her subordinate who deprived Plaintiff of her rights nor the factual basis for her conclusion that the Warden adopted a policy which deprived her of her rights.

Because the Proposed Amended Complaint fails to correct the above deficiencies, the Court denies Plaintiff's Motion for Leave to Amend Complaint.   [Doc. 28]   However,

34

the Court will grant Plaintiff leave to file a second motion to amend her complaint, with an attached proposed amended complaint which corrects the above identified deficiencies. Finally, in her revised Proposed Amended Complaint, the Court grants Plaintiff leave to incorporate her allegations against Eric Jim and/or Eric Chee and to add Counts Six, Seven and Eight against Eric Jim and/or Eric Chee.

## VII.  CONCLUSION

**IT IS THEREFORE ORDERED** that *McKinley County Defendants' Motion to Dismiss Plaintiff's Complaint for Damages due to the Failure to Provide Medical Care and for Qualified Immunity and Memorandum in Support Thereof* [Doc. 17] is hereby **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's claims against Defendants McKinley County Adult Detention Center are **dismissed without leave to amend**;

**IT IS FURTHER ORDERED** that Plaintiff's claims against Defendants Warden Mabel Henderson and John Doe I are **dismissed with leave to amend;**

**IT IS FURTHER ORDERED** that Plaintiff is **granted leave to file a Motion to Amend her Complaint,** with an attached, revised Proposed Amended Complaint that corrects the deficiencies identified above, within fourteen (14)   days from the date of entry of this this Order;

35

**IT IS FURTHER ORDERED** that Plaintiff's *Opposed Motion for Leave of Court to Amend Complaint* [Doc. 28] is **denied.**

**SO ORDERED** this 31st day of March, 2013 in Albuquerque, New Mexico.

M. CHRISTINA ARMIJO
Chief Judge, United States District Court