IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SAMANTHA LEE,

Plaintiff,

v.                                          No. 12-CV-1124 MCA/ACT

MCKINLEY COUNTY ADULT
DETENTION CENTER, et al.,

Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on *Plaintiff's Opposed Motion for Leave of Court to Amend Complaint Pursuant to the Court's Order* [Doc. 43] and Defendant Correctional Healthcare Companies, Inc.'s (CHC) *Partial Motion to Dismiss*. [Doc. 34] Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court **DENIES** *Plaintiff's Opposed Motion for Leave to Amend Complaint* [Doc. 43]; **GRANTS-IN-PART** and **DENIES-IN-PART** CHC's *Partial Motion to Dismiss* [Doc. 34]; and **GRANTS** Plaintiff leave to file one final amended complaint with the limitations and corrections as spelled out herein.

## I.      PROCEDURAL AND FACTUAL BACKGROUND

### A.  Procedural Posture

Plaintiff originally filed her Complaint in the Second Judicial District Court, County of Bernalillo, New Mexico.   [Doc. 1; Doc. 1-2]   McKinley County Adult

Detention Center and Mabel Henderson removed the case to this Court.  [Doc. 1]  After removal and before either an answer or a motion to dismiss was filed by any Defendant, she amended her Complaint on November 13, 2012, substituting "Bernalillo County" for "Bernalillo County Metropolitan Detention Center" as a named Defendant.  [Doc. 8, p. 1] Then, the next day, without seeking leave of the Court, she filed another Amended Complaint.[1]  [Doc. 9]  Plaintiff indicated that her November 14, 2012 Complaint was filed to substitute the "Board of County Commissioners for the County of Bernalillo" as a named Defendant for "Bernalillo County."  [Doc. 9, n.1]

The McKinley County Defendants and Mabel Henderson filed a *Motion to Dismiss* [Doc. 17] and a *Motion to Stay Proceedings* pending the outcome of their *Motion to Dismiss*.  [Doc. 19]  The Magistrate Judge stayed discovery pending the outcome of the McKinley County Defendants' *Motion to Dismiss* as it raised the defense of qualified immunity.  [Doc. 24]  Plaintiff subsequently filed an opposed Motion to Amend or Correct her Complaint to add McKinley County Sheriff's Deputies Eric Jim and Eric Chee.  [Doc. 28]

On March 31, 2014 the Court entered a *Memorandum Opinion and Order* Granting the McKinley County Defendants' *Motion to Dismiss*.  [Doc. 42 p. 35]  In the same *Memorandum Opinion and Order* the Court denied Plaintiff's Motion to Amend her Complaint because it failed to correct the deficiencies found by the Court in the

---

[1] Plaintiff styled both her November 13, 2012 and November 14, 2012 Complaints as her "First Amended Complaint for Damages Due to Failure to Provide Medical Care."  [Doc. 8; Doc. 9]  For clarity, the Court will refer to the second of these Complaints as either the currently operative Complaint or the November 14, 2012 Complaint.

*Memorandum Opinion and Order.*  [Doc. 42, p. 35]   Nonetheless, the Court granted Plaintiff leave to file a Motion to Amend her Complaint with a complaint that corrected the deficiencies discussed in the *Memorandum Opinion and Order*.  [Doc. 42, p. 35] Plaintiff thereafter filed another opposed Motion to Amend.  [Doc. 43]  All Defendants have now filed Responses in Opposition to the Motion to Amend.  [Docs. 44, 45, 46]  In the meantime, prior to the Court's *Memorandum Opinion and Order*, Defendant CHC filed a *Partial Motion to Dismiss* Plaintiff's November 14, 2012 Complaint (as Plaintiff had not yet submitted her Proposed Third Amended Complaint).  [Doc. 34]

Given this procedural posture, the Court considers CHC's *Partial Motion to Dismiss* and Plaintiff's *Motion to Amend Complaint.*  The Court sets out the facts stated in Plaintiff's Proposed Third Amended Complaint.[2]

### B.  Factual Background

On October 14, 2010, Plaintiff Samantha Lee broke her right humerus and was taken by EMS and McKinley County Sheriff's Deputies to Indian Health Services (IHS) in Gallup, New Mexico.[3]  [Doc. 43-1, ¶ 31] Due to the nature of the break, Plaintiff

---

[2] As a technical matter, pursuant to the procedural posture of the motion, the Court considers CHC's *Partial Motion to Dismiss* based on the allegations stated in Plaintiff's November 14, 2012 Complaint.  As they pertain to CHC, the factual differences between the November 14, 2012 Complaint and the Proposed Third Amended Complaint are the identification of Pam Cigarroa and John Doe II and the identification of which actions were taken by Ms. Cigarroa.  [Compare Doc. 9, ¶¶ 29-44 with Doc. 43-1, ¶¶ 41-56] These differences do not alter the Court's analysis with regard to CHC's *Partial Motion to Dismiss*, and thus the Court will not set out the factual allegations in the November 14, 2012 Complaint at great length in discussing the facts of the case.

[3] The Court notes that the Proposed Third Amended Complaint (again) alleges Plaintiff broke her right humerus on October 14, 2012. [Doc. 43-1, ¶ 31] In the context of the rest

required surgery, which was scheduled by IHS for October 18, 2010. [Doc. 43-1, ¶ 32]

On October 15, 2010, Plaintiff was transported from the IHS facility to the McKinley

County Adult Detention Center (MCADC).  [Doc. 43-1, ¶ 33]  Health care providers at

the IHS facility provided copies of her medical paperwork, including documentation that

she had surgery scheduled on October 18, 2010, to the corrections officer who

transported her to MCADC. [Doc. 43-1, ¶ 33] Nonetheless, within a few hours of her

arrival at the MCADC, she was transferred to the Bernalillo County Metropolitan

Detention Center (BCMDC), over her protests and despite her need for the scheduled

surgery. [Doc. 43-1, ¶ 38]

After Plaintiff was transferred to BCMDC, Pam Cigarroa, a registered nurse

employed by "Correctional Healthcare Management" took away her pain medications.[4]

[Doc. 43-1, ¶¶ 14, 43] Plaintiff was not transported to her scheduled surgery.  [Doc. 43-1,

¶ 38]  "CHC/BCMDC staff" waited several days before administering an X-Ray, putting

her arm in a sling and prescribing Naproxen.  [Doc. 43-1, ¶¶ 46, 47]  Plaintiff first saw a

doctor six days after she arrived at BCMDC.  [Doc. 43-1, ¶ 49]  She was taken to an

orthopedics clinic nearly two weeks after arriving at BCMDC.  [Doc. 43-1, ¶ 50] By that

time, she had developed complete nerve palsy and had been in "extreme and

of the dates as alleged in the Complaint, the Court believes this is a typographical error
and Plaintiff actually broke her right humerus on October 14, 2010. [*See, e.g.,* Doc. 43-1,
¶ 31-41]  Plaintiff is ordered to carefully review her allegations and correct any errors in
her next and final amended complaint.

[4] Bernalillo County contracted with Defendant CHC to provide healthcare at BCMDC
beginning on July 1, 2010.  [Doc. 43-1, ¶ 89; Doc. 35-1, p. 1]  The Court believes that
Plaintiff intends to refer to CHC, not Correctional Healthcare Management.  Again,
Plaintiff is ordered to correct all errors in her final amended complaint.

unimaginable pain for over two weeks." [Doc. 43-1, ¶ 52]   In January of 2011, three months after her initial injury, Plaintiff finally underwent surgery, which required the placement of numerous metal plates, screws and rods in her arm. [Doc. 43-1, ¶ 53] Then, on April 3, 2011, she slipped on a wet floor at BCMDC and reinjured her arm. [Doc. 43-1, ¶ 54] She notified BCMDC staff that she may have reinjured her arm and that she was in pain and showing signs of possible infection. [Doc. 43-1, ¶¶ 54, 55] Plaintiff was seen by CHC staff in May of 2011, who accused her of seeking medical attention in an effort to obtain prescription strength painkillers. [Doc. 43-1, ¶ 56] Despite her complaints, X-Rays were not taken until June of 2011. [Doc. 43-1, ¶¶ 55-57] According to Plaintiff, the X-Rays did not show that the hardware had disengaged from Plaintiff's bone and was imbedded in her soft tissue. [Doc. 43-1, ¶ 57] Upon Plaintiff's release from BCMDC in August of 2011, she sought medical treatment and learned that the hardware had disengaged from her bone and she had infections which required months of oral and intravenously administered antibiotics. [Doc. 43-1, ¶¶ 62, 63] Plaintiff also required several surgeries to treat the infection and to attempt to repair the damage to her bone and tissue. [Doc. 43-1, ¶¶ 63, 64] She now cannot lift anything with her arm, suffers from permanent nerve damage and is permanently disfigured. [Doc. 43-1, ¶¶ 65, 66, 67]

## II.   LEGAL STANDARDS

### A.   AMENDMENT OF THE COMPLAINT

A party may amend her complaint "once as a matter of course" within 21 days of being served with a responsive pleading or a motion to dismiss for failure to state a claim. Fed. R. Civ. P. 15(a)(1)(B). Thereafter, amendment requires leave of the Court or written consent of the opposing parties. Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis,* 371 U.S. 178, 182 (1962). Nonetheless, the Court may deny leave to amend a pleading under Fed. R. Civ. P. 15(a) based upon a justifying reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Id.*; *accord Hom v. Squire*, 81 F.3d 969, 973 (10th Cir. 1996). A motion to amend a complaint should be denied as futile if, notwithstanding the amendment, the complaint would be subject to dismissal under Rule 12(b)(6), *see Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999), or when, even as amended, the complaint could not survive a motion for summary judgment. *Bauchman ex rel. Bauchman v. West High Sch.*, 132 F.3d 542, 562 (10th Cir. 1997). When the district court denies a motion to amend on the grounds of futility, the appellate court reviews "de novo whether it is patently obvious that the plaintiff could not prevail on the facts alleged." *Cohen v. Longshore*, 621 F.3d 1311, 1314-15 (10th Cir. 2010) (internal quotation marks and citation omitted).

### B.     RULE 12(b)(6)

A court will dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  For decades, Rule 12(b)(6) motions were governed by a test taken from *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957):  a complaint was subject to dismissal pursuant to Rule 12(b)(6) only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Conley*, 355 U.S. at 45-46) (internal quotation marks omitted). In *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007), the Court retired *Conley*'s test, replacing it with a new standard:  "to withstand a motion to dismiss, a complaint must have enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Collins*, 656 F.3d at 1214 (quoting *Twombly*, 550 U.S. at 570)). In applying this standard, a court accepts as true all "plausible, non-conclusory, and non-speculative" facts alleged in the plaintiff's complaint. *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011) (internal quotation marks and citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, "'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim" that "'raise a right to relief above the speculative level.'"  *Collins*, 656 F.3d at 1214 (quoting *Twombly*, 550 U.S. at 555).  In short, in ruling on a 12(b)(6) motion, "a court should disregard all conclusory statements

of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Collins*, 656 F.3d at 1214.

### C.    LIABILITY UNDER SECTION 1983

Plaintiff brings her Section 1983 claims against McKinley County Defendants, Bernalillo County Defendants, and CHC, a private contractor and its employees.  Under Section 1983, a private entity acting "under compulsion of state law" may be liable for a deprivation of constitutional rights.  *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 171 (1970).

> Although the Supreme Court's interpretation of § 1983 in *Monell* applied to municipal governments and not to private entities acting under color of state law, caselaw from this and other circuits has extended the *Monell* doctrine to private § 1983 defendants.  Therefore, a private actor cannot be held liable solely because it employs a tortfeasor—or, in other words ... cannot be held liable under § 1983 on a *respondeat superior* theory.

*Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003) (internal footnotes and quotation marks omitted) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)).

A plaintiff suing pursuant to Section 1983 for the acts of one or more of the employees of a governmental entity, or a private entity acting under color of state law, must prove:  (1) that the municipal or private employee committed a constitutional violation, and (2) that the employer's policy or custom was the moving force behind the constitutional deprivation.  *Myers v. Oklahoma County Bd. of Cnty. Comm'rs,* 151 F.3d 1313, 1316 (10th Cir. 1998); *see also Connick v. Thompson*, 131 S.Ct. 1350, 1359 (2011) ("Plaintiffs who seek to impose liability on local governments under § 1983 must prove that action pursuant to official municipal policy caused their injury." (internal quotation

8

marks and citation omitted)); *Smedley v. Corr. Corp. of Am.*, 175 Fed.Appx. 943, 946 (10th Cir. 2005) (unpublished decision).  "A challenged practice may be deemed an official policy or custom for § 1983 municipal-liability purposes if it is a formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policymaker, or deliberately indifferent training or supervision." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013).  Employer or "municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986).

### i.    *Failure to Train or Supervise*

"In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of §1983." *Id.*  In the context of a claim for failure to train, proof is required that the municipality was deliberately indifferent to its inhabitants.  *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998).

> [W]hen city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program. The city's policy of inaction in light of notice that its program will cause constitutional violations is the functional equivalent of a decision by the city itself to violate the Constitution.

*Connick*, 131 S.Ct. at 1360 (internal quotation marks and citation omitted).  Generally, notice to the Section 1983 defendant must be shown by "[a] pattern of similar constitutional violations by untrained employees."  *Id.*  "Policymakers' continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the deliberate indifference—necessary to trigger municipal liability."  *Id.* (internal quotation marks and citation omitted).

### ii.   *Inadequate Medical Care*

"Under the Fourteenth Amendment due process clause, pretrial detainees are entitled to the degree of protection against denial of medical attention which applies to convicted inmates under the Eighth Amendment."  (internal quotation marks, citation and ellipses are omitted).  *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009).

> In the worst cases, [the failure to provide medical care] may actually produce physical torture or a lingering death, the evils of most immediate concern to the drafters of the Amendment.  In less serious cases, denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose.  The infliction of such unnecessary suffering is inconsistent with contemporary standards of decency as manifested in modern legislation codifying the common-law view that it is but just that the public be required to care for the prisoner, who cannot by reason of the deprivation of his liberty, care for himself.

*Estelle v. Gamble,* 429 U.S. 97, 103-04 (1976) (internal quotation marks, citations, footnotes and alterations omitted).

Negligence alone is insufficient to establish liability against the Section 1983 defendant for inadequate medical care.  *Woodward v. City of Worland*, 977 F.2d 1392,

1400 (10th Cir. 1992).  "A claim for inadequate medical attention will be successful if the plaintiff shows deliberate indifference to serious medical needs.  The Supreme Court cautioned that an inadvertent failure to provide adequate medical care does not rise to a constitutional violation."  *Martinez*, 563 F.3d at 1088 (internal quotation marks and citations omitted).  However, the Eighth Amendment forbids intentionally or by deliberate indifference denying or delaying access to medical care or interfering with a treatment once it is prescribed.  *Estelle*, 429 U.S. at 104-05.  Further, while "not every twinge of pain suffered as the result of delay in medical care is actionable," the "Eighth Amendment forbids unnecessary and wanton infliction of pain."  *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000) (internal quotation marks, citations and emphasis omitted) (holding that delay of treatment for 36 hours while plaintiff was suffering "severe chest pain" from heart attack was actionable under the Eighth Amendment) (citing *Jones v. Johnson*, 781 F.2d 769, 771-72 (9th Cir. 1986) (holding that pain and suffering and inability to work resulting from untreated hernia, for which surgery had been scheduled prior to the plaintiff's incarceration, established a serious medical need under the Fourteenth Amendment), *overruled on other grounds by Peralta v. Dillard*, 744 F.3d 1077, 1083 (9th Cir. 2014)).

"The test for deliberate indifference is both objective and subjective.  The objective component of the test is met if the harm suffered rises to a level sufficiently serious to be cognizable under the Cruel and Unusual Punishment Clause."  *Martinez*, 563 F.3d at 1088 (internal quotation marks and citation omitted).  A medical need is

11

"sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (internal quotation marks and citation omitted).  Delay in medical care is only violative of the Eighth Amendment where the plaintiff suffered substantial harm, which can "be satisfied by lifelong handicap, permanent loss, or considerable pain."  *Id.*  (internal quotation marks and citations omitted).  "Delays that courts have found to violate the Eighth Amendment have frequently involved life-threatening situations and instances in which it is apparent that delay would exacerbate the prisoner's medical problems."  *Hunt v. Uphoff,* 199 F.3d 1220, 1224 (10th Cir. 1999) (internal quotation marks and citation omitted).  Pain alone, however, can also satisfy the objective component of the test, when the pain is "significant, as opposed to trivial, suffering."  *Al-Turki v. Robinson*, ___ P.3d ___, 2014 WL 3906851, *3 (10th Cir. 2014) (internal quotation marks and citation omitted).

"To prevail on the subjective component, the prisoner must show that the defendants knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it."  *Martinez*, 563 F.3d at 1089 (internal quotation marks and citation omitted).  "The question is: were the symptoms such that a prison employee knew the risk to the prisoner and chose (recklessly) to disregard it?"  *Id.* (internal quotation marks and citation omitted).

## III.    PLAINTIFF'S CLAIMS

### A.      SECTION 1983 CLAIMS AGAINST CHC, DOE II AND PAM CIGARROA

#### *i.      Count I: Constitutionally Inadequate Medical Care*

Plaintiff brings two claims (Counts I and II) under 42 U.S.C. § 1983 against CHC[5] for violating her Eighth and Fourteenth Amendment[6] rights.  Though Plaintiff does not expressly identify CHC in the heading of her first Section 1983 claim, premised on constitutionally inadequate medical care, she makes one allegation in the body of this count pertaining to CHC:  "Defendant CHC, both on its own and through its physicians, nurses, other health center staff, and administrators, had an official policy, custom or practice that was deliberately indifferent to Plaintiff's Eighth Amendment rights."  [Doc. 43-1, ¶ 76]

The Court concludes that this allegation is a bare and conclusory "formulaic recitation of the elements" of Section 1983 liability.  *Iqbal*, 556 U.S. at 681 (internal quotation marks and citation omitted).  The Complaint neither identifies or describes CHC's official policy nor identifies or describes other instances (i.e. facts establishing a custom or practice) in which CHC has violated inmates' constitutional rights to adequate

---

[5] Plaintiff also brings state law tort claims against CHC and its employees, which CHC did not move to dismiss or argue are futile.

[6] Plaintiff does not expressly allege a denial of her Fourteenth Amendment rights in Counts I or II.  The Bernalillo County Defendants cite a case dismissing, but allowing the plaintiff to amend, a claim incorrectly brought by a pre-trial detainee under the Eighth Amendment though the Supreme Court has held that the Fourteenth Amendment governs such claims.  *Chavez v. Bd. of Cnty. Comm'rs of Sierra Cnty.*, 899 F.Supp.2d 1163, 1186-87 (D.N.M. 2012).  The Court orders Plaintiff to correct this deficiency in her final amended complaint.

medical care.  *Compare Wilson v. Montano*, 715 F.3d 847, 851 n. 3 & 857-58 (10th Cir. 2013) (holding the plaintiff had met *Iqbal*'s pleading standard where the plaintiff alleged that supervisory defendants established a policy or custom of detaining citizens without filing charges and where six plaintiff's cases based on the same allegations were consolidated).  Plaintiff has not alleged facts which state a claim under Section 1983 for inadequate medical care against CHC, and thus, this claim must be dismissed.

Further, even considering the evidence which Plaintiff has submitted in opposition to CHC's motion to dismiss,[7] the Court would reach the same result.  Plaintiff submits several policies, which she identifies as BCMDC policies, regarding medical care.  For example, she attaches Policy 1236, "Receiving Screening (Essential)," which states: "This standard has a three-fold purpose: (1) to identify and meet any urgent medical/mental health needs of those admitted; (2) to identify and meet any known or easily identifiable medical/mental health needs that require intervention before the health assessment; and (3) to identify and isolate inmates who appear potentially contagious." [Doc. 35-7, p. 5]  The procedure lists seven steps, including inquiry into current health problems and ensuring that "routine; urgent, and emergent needs are scheduled and

---

[7] If the Court were only considering the *Partial Motion to Dismiss,* the Court would consider this documentation pursuant to Federal Rule of Civil Procedure 12(d), converting the motion into one for summary judgment.  However the Court is also considering Plaintiff's *Motion to Amend Complaint*.  In *Bauchman*, our Tenth Circuit determined that the district court did not err by considering evidence submitted by the plaintiff in support of her proposed amended complaint because amendment is futile where the plaintiff could not survive a motion to dismiss.  *Bauchman*, 132 F.3d at 561-62.  Thus, in considering the *Motion for Leave to Amend Plaintiff's Complaint*, Federal Rule of Civil Procedure 12(d) does not apply.  *Id.*

followed up." [Doc. 35-7, p. 5] Compliance with this policy (and the others attached by Plaintiff) would not cause violation of Plaintiff's constitutional rights, and thus this proof does not meet the causation requirement of *Monell*: "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694. Plaintiff's brief underscores that the policies are constitutionally adequate. Rather than arguing that compliance with the policies caused her to receive inadequate medical care, she argues that the failure to comply with the policies caused her injuries. [Doc. 35, pp. 13-14] Our Tenth Circuit recently rejected an argument similar to Plaintiff's, holding that an inmate plaintiff failed to create a genuine issue of material fact on his failure to train claim where the evidence was that a corrections officer "knew he was acting in defiance" of the county jail's policy on the use of tasers when he used a taser on the plaintiff. *Porro v. Barnes*, 624 F.3d 1322, 1328-29 (10th Cir. 2010). Section 1983 is not meant to hold employers liable "unless action pursuant to official municipal policy of some nature caused a constitutional tort[,]" *Monell*, 436 U.S. at 691, and thus, Plaintiff has failed to plead that CHC or Bernalillo County policies caused her injuries.

Plaintiff submits another document in order to establish a custom or practice of constitutionally inadequate care. She attached a list of 119 tort claim notices to Bernalillo County for inadequate medical care from 2006 to 2011. [Doc. 35-9] This list does not create a genuine issue of material fact as to a custom or policy of inadequate

medical care by CHC for at least two reasons.  First, CHC's contract with Bernalillo County began in July of 2010, and there are only 19 tort notices on the list during the two year period in which CHC provided medical care at BCMDC.  [Doc. 35-9; Doc. 35-5, p. 1]  Second and moreover, a notice of a tort claim is not evidence of inadequate care or deliberate indifference.  *Compare Wilson*, 715 F.3d at 851 n. 3 & 857-58 (holding the plaintiff had met *Iqbal*'s pleading standard where the plaintiff alleged that supervisory defendants established a policy or custom of detaining citizens without filing charges and where six plaintiff's cases based on the same allegations were consolidated and the allegations in all of the consolidated cases were taken as true for purposes of the motion to dismiss).  Thus, even considering Plaintiff's evidence, it would be insufficient to survive a motion for summary judgment by showing that CHC had a custom or practice of providing inadequate medical care.  Plaintiff's claim against CHC under Count I are thus dismissed with prejudice.

Plaintiff's Count I claim against Pam Cigarroa, a nurse employed by CHC, however, is made with sufficient specificity to meet the requirements of *Iqbal*.  Plaintiff alleges that, upon her arrival at BCMDC, Ms. Cigarroa took away her pain medications and refused to give her pain medication despite Plaintiff's "obvious" need for them.  [Doc. 43-1, ¶ 43]  Ms. Cigarroa was given Plaintiff's paperwork from IHS, which showed that she had a surgery scheduled to repair her broken arm.  [Doc. 43-1, ¶ 43]  Plaintiff informed Ms. Cigarroa of her broken arm and that she was in "extreme pain."  [Doc. 43-1, ¶ 42]  Plaintiff's arm was extremely swollen.  [Doc. 43-1, ¶ 42]  Ms. Cigarroa

knew that Plaintiff had seen a doctor who diagnosed her with an "angulated comminuted displaced fracture of the mid-shaft of the humerus" and she knew Plaintiff had been given pain medication.   [Doc. 43-1, ¶¶ 43-44]   Ms. Cigarroa took away Plaintiff's pain medication and noted only that Plaintiff needed "wound care."   [Doc. 43-1, ¶ 45]  Most significantly, though Ms. Cigarroa knew that Plaintiff had been scheduled for surgery within three days of her injury, Ms. Cigarroa did not ensure treatment – or even evaluation by a medical doctor, until six days after Plaintiff's arrival at BCMDC, or nine days after her injury.  [Doc. 43-1, ¶ 49]

These allegations state a claim for inadequate medical care under the Fourteenth Amendment.  With respect to pain, Plaintiff has made out a claim that, because of Ms. Cigarroa's actions in depriving her of pain medication for "several days," Plaintiff suffered significant pain which served no legitimate penological purpose and was, potentially, "inconsistent with contemporary standards of decency."  *Estelle*, 429 U.S. at 103-04; *see also Al-Turki*, 2014 WL 3906851, *3-4 (holding that plaintiff who suffered from severe pain for five to six hours, vomited, collapsed, and thought he was going to die from what turned out to be kidney stones satisfied objective component of test for deliberate indifference to his pain).  Further, when granted all reasonable and favorable inferences, Plaintiff's allegations state a claim as to long term loss:  Ms. Cigarroa determined when Plaintiff would receive X-Rays and see a medical doctor, and that the delay of six days before seeing a medical doctor resulted in an exacerbation of her medical problems, as Plaintiff had developed complete nerve palsy by her visit to the

orthopedic clinic and ultimately has suffered permanent impairment of the use of her arm.[8]   [Doc. 43-1, ¶¶ 51-52]   Thus, Plaintiff's allegations satisfy the "objective component" of the test for deliberate indifference.  *See Martinez*, 563 F.3d at 1088.  The allegations also meet the subjective component of the test for deliberate indifference, given that Ms. Cigarroa was a nurse who knew that Plaintiff had an "angulated comminuted displaced fracture of the mid-shaft of the humerus" and knew that a doctor had previously scheduled surgery a short three days after her injury, suggesting urgency in treatment.  [Doc. 43-1, ¶ 44]  Plaintiff's allegations, when all reasonable inferences are made in her favor, state a claim that Ms. Cigarroa knew Plaintiff faced a substantial risk of pain or exacerbation of her injuries and failed to take reasonable measures to address Plaintiff's condition by allowing a delay of six days before she saw a doctor.  *See id.* at 1089; *see also Boyett v. Cnty. of Washington*, 282 Fed.Appx. 667, 672-73 (10th Cir. 2008) (unpublished decision) ("In cases involving allegations of missed diagnoses or delayed treatment, plaintiffs may establish liability by showing . . . a medical professional recognizes an inability to treat the patient due to the seriousness of the condition and his corresponding lack of expertise but nevertheless declines or unnecessarily delays referral[.]" (internal quotation marks and citation omitted)); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (holding that the plaintiff's inadequate medical care allegations met

---

[8] The Court is not persuaded by Plaintiff's argument that she has stated a claim for deliberate indifference because Ms. Cigarroa failed to immediately send Plaintiff to the emergency room on her arrival at BCMDC, given that Plaintiff's allegations suggest she was discharged from the emergency room and nothing happened between that discharge and her arrival at BCMDC to require additional emergency care, as opposed to surgery. [Doc. 35, pp. 14-15]

*Twombly's* pleading standard as to suffering substantial harm and the culpable state of mind of the doctor where the doctor withheld Hepatitis C treatment which the plaintiff alleged could cause irreversible liver damage). Accordingly, Plaintiff's claim for inadequate medical care against Ms. Cigarroa survives.

### ii.   Count II:  Unconstitutional Failure to Train

Plaintiff brings her second Section 1983 claim against CHC and Doe II for failing to train and supervise Doe II and Pam Cigarroa.[9]  [Doc. 43-1, ¶¶ 79-99]

Plaintiff alleges, *inter alia*:

90.     John/Jane Doe II as director of medical services at the Bernalillo County Metropolitan Detention Center was in charge of the administration, management and operation of BCMDC's medical facilities and personnel as well as to provide proper training and supervision for the medical care received by inmates such as Plaintiff.

91.     Defendants CHC, Rustin, and Bernalillo County hired Defendant John/Jane Doe II knowing he/she had inadequate experience and training in the administration of the health services center, and knowing that Defendant Cigarroa had inadequate experience and training in administering medical care to inmates.

92.     Given Defendants John/Jane Doe II and Defendant Cigarroa [*sic*] inexperience and lack of training in medical unit administration and medical care to inmates and that Defendants knew that the failure to properly administer the medical unit, including procuring adequate medical treatment for injured inmates, could be life-threatening to inmates with serious medical conditions, it was foreseeable there would be safety, civil rights, and administrative violations at the BCMDC's medical unit.

93.     Defendants had reason to believe that hiring Defendants John/Jane Doe II Defendant Cigarroa [*sic*] would create an unreasonable risk of harm to BCMDC inmates, such as Plaintiff.

---

[9]  Plaintiff alleges that Defendants John/Jane Doe II was the Director of Medicine employed by CHC.  [Doc. 43-1, ¶¶ 17-18] Nonetheless, Plaintiff makes no allegations as to how John/Jane Doe II violated her constitutional rights, what actions John/Jane Doe II took or directed, or what contact he or she had with Plaintiff.

94.    Defendants failed to adequately train, supervise, and/or terminate the employment of Defendants John/Jane Doe II and Defendant Cigarroa even though they knew, or had reason to know, that their failure to adequately administer the BCMDC medical units and provide adequate medical care to inmates was likely to be the cause of the deprivation of an inmate's Eighth Amendment rights.

95.    Defendants knowingly hired individuals, including Defendant Cigarroa and John/Jane Doe II, who did not possess the requisite training and experience to properly operate and administer the medical units at BCMDC and respond appropriately to medical emergencies.

[Doc. 43-1]  Plaintiff also alleges that "Defendants" were deliberately indifferent to the medical needs of plaintiff; "Defendants" could have and should have pursued reasonable training methods; that "Defendant's" (*sic*) customs, policies or usages in failing to train and supervise their employees were the moving forces behind Plaintiff's injuries; and that "Defendants" intentionally deprived Plaintiff of her constitutional rights.  [Doc. 43-1, ¶¶ 96-99]

Again, bound by *Iqbal*, the Court must conclude that Plaintiff's failure to train and supervise allegations against Defendants CHC and Doe II are a bare, speculative and conclusory "formulaic recitation of the elements" of Section 1983 liability.  *Iqbal*, 556 U.S. at 681 (internal quotation marks and citation omitted); 633 F.3d at 1239.  She fails to allege facts showing a pattern of similar constitutional violations by Cigarroa, Doe II or other CHC employees which would have put CHC on notice that its policies and practices were depriving inmates of their constitutional rights.  *See Connick*, 131 S.Ct. at 1360.  She has not alleged facts which state a claim under Section 1983 for the failure to supervise and train against CHC (and likewise against CHC employee John/Jane Doe II), and thus, these claims must be dismissed.  *Id.* (holding that a "single instance" does not

establish a pattern of similar constitutional violations by untrained employees); s*ee also Glaser v. City and Cnty. of Denver, Colo.*, 557 Fed.Appx. 689, 702 (10th Cir. 2014) (unpublished decision) (holding that the plaintiff's conclusory, non-specific allegation failed to state a claim for failure to properly train employees).

Nor does the evidence submitted by Plaintiff demonstrate that she could survive a motion for summary judgment. Plaintiff submits several policies, which she identifies as BCMDC policies, regarding training. For example, Policy 12.08, which requires training for correctional officers on "[r]ecognizing the signs/symptoms of the need for emergency care[,]" and "[p]rocedures for appropriate referral for health complaints[,]" among others. [Doc. 35-6, p. 1] Compliance with this policy would not cause the violation of Plaintiff's constitutional rights, and thus this proof does not meet the causation requirement of *Monell. Monell*, 436 U.S. at 694. For the same reasons discussed above, the Court also concludes that the list of tort claim notices submitted by Plaintiff did not put CHC on notice of constitutionally inadequate training or supervision. [Doc. 35-9]

As such, Plaintiff's claim against Defendants CHC and Doe II for the unconstitutional failure to train and supervise are dismissed with prejudice.

## B.    BERNALILLO COUNTY DEFENDANTS

Defendants Ramon Rustin and Bernalillo County Board of Commissioners oppose leave for Plaintiff to file her proposed Third Amended Complaint on the grounds of futility given the Court's previous *Memorandum Opinion and Order*. [Doc. 42; Doc. 44, pp. 1-3] Plaintiff disagrees and raises a preliminary issue, arguing that the Bernalillo

County Defendants missed their opportunity to file a motion to dismiss and should be precluded from using their Response in Opposition to Plaintiff's Motion to Amend as a platform for a motion to dismiss.   [Doc. 47, pp. 2-3]   Plaintiff's argument is not persuasive because this Court must consider whether Plaintiff's proposed amendment is futile.  *See Jefferson Cnty. Sch. Dist. No. 1*, 175 F.3d at 859.  If Plaintiff were allowed to amend with futile claims, Defendants would have the opportunity to file a motion to dismiss after it was filed.   By considering the futility of the claims in the Proposed Amended Complaint now, rather than later, the Court will reduce delay for Plaintiff based on further motion practice.   Thus, the Court reaches the merits of the Bernalillo County's arguments.

### i.   *Count I: Constitutionally Inadequate Medical Care*

Plaintiff's Proposed Third Amended Complaint asserts a claim for constitutionally inadequate medical care against Defendant Ramon Rustin, Warden of the Bernalillo County Detention Center.  [Doc. 43-1, ¶¶ 68-78]  As the Bernalillo County Defendants point out, Plaintiff does not specify whether this claim is against Ramon Rustin in his individual or official capacity. [Doc. 44, p. 9]  *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) (distinguishing between claims brought against officials in their official and personal capacities).  Nonetheless, the lack of specific, non-speculative factual allegations against Mr. Rustin defeats Plaintiff's claims against Mr. Rustin in either his official or individual capacity.

The Complaint does not allege facts which establish that Mr. Rustin, in his individual capacity, "acting under color of state law, caused the deprivation of a federal right." *Hafer*, 502 U.S. at 25 (internal quotation marks and citation omitted); *see also Dodds v. Richardson*, 614 F.3d 1185, 1198 (10th Cir. 2010) (requiring the plaintiff to show that the official "by virtue of his own conduct and state of mind[,]" violated the plaintiff's rights). The Complaint makes no allegations that Mr. Rustin had any contact with Plaintiff or made any decisions regarding her medical care, but instead relies on his status as warden to establish liability. [See Doc. 47, p. 5] Nor has Plaintiff identified any policy enacted by Mr. Rustin which caused a violation of her right to adequate medical care. Again, under *Iqbal*, Plaintiff's conclusory allegations are not entitled to be presumed to be true. *See Iqbal*, 556 U.S. at 680-81 (holding that allegations that cabinet level governmental employees were the "principal architect" and instrumental in the adoption of a policy to subject Muslims to harsh conditions of confinement were conclusory and a "formulaic recitation of the elements" of the plaintiff's claim). Further, Plaintiff has not alleged facts sufficient to establish an official capacity claim, i.e., that "the entity's policy or custom . . . played a part in the violation of federal law." *Hafer*, 502 U.S. at 25 (internal quotation marks and citation omitted). Thus, Plaintiff has failed to state a claim for constitutionally inadequate medical care against Defendant Rustin. Finally, to the extent Plaintiff intended to state a claim against the Bernalillo County Board of Commissioners, her claim fails for the same lack of factual allegations.[10]

---

[10] If suing Mr. Rustin in his official capacity, Plaintiff is in fact suing the Bernalillo

### ii.    *Count II:  Unconstitutional Failure to Train*

In Count II, Plaintiff attempts to state a claim against the Bernalillo County Board of Commissioners and Ramon Rustin (among others) for constitutionally inadequate training and supervision.   Plaintiff alleges that Defendant Rustin was "at all times material responsible for the maintenance, operation, and control of BCMDC."  [Doc. 43-1, ¶¶ 88-99]  All other allegations against the Bernalillo County Defendants are made in paragraphs 90 through 99, excerpted or paraphrased in the Court's analysis of Plaintiff's Count II claim against CHC, above.  And, for the same reasons as set forth with regard to CHC, the Court must conclude that Plaintiff has set forth only conclusory allegations of the failure to train and supervise against the Bernalillo County Defendants.  *See Iqbal*, 556 U.S. at 680-81.  Thus, Count II as against the Bernalillo County Defendants is futile.

### iii.    *State Law Claims for Medical Negligence, Failure to Train and Outrageous Conduct*

In Count III, Plaintiff sets out a state law claim for negligent medical care and treatment against all Defendants.  However, the Bernalillo County Defendants argue that the New Mexico Legislature has not waived immunity for torts committed by the employees of CHC, a private health care contractor for the County jail.  [Doc. 44, pp. 12-13]  New Mexico law waives immunity for the "negligence of public employees . . . in the operation of any hospital, infirmary, mental institution, clinic, dispensary, medical

---

County Board of Commissioners as the entity of which he is an agent.  *Hafer*, 502 U.S. at 25 ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." (internal quotation marks and citation omitted)).

care home or like facilities." N.M.S.A. 1978, § 41-4-9 (1977).  Defendants argue that CHC's employees do not meet the statutory definition of a public employee.  [Doc. 44, pp. 12-13]  The Court agrees.  Under New Mexico law a "'public employee' means an officer, employee or servant of a governmental entity, excluding independent contractors except for individuals defined in Paragraphs (7), (8), (10), (14) and (17) of this subsection[.]"  N.M.S.A. 1978, § 41-4-3(F) (2013).  Of the listed exceptions, none are applicable to CHC, including the exception for "licensed medical, psychological or dental arts practitioners providing services to the corrections department pursuant to contract[.]"  Section 41-4-3(F)(7).  The Bernalillo County Metropolitan Detention Center does not fall under the corrections department, and thus New Mexico has not waived immunity for the actions of CHC's employees.  N.M.S.A. 1978, § 33-3-1(A) (1984) ("The common jails shall be under the control of the respective sheriffs, independent contractors or jail administrators hired by the board of county commissioners or other local public body or combination thereof[.]"); *see also* N.M.S.A. 1978, § 33-3-27(E) (2007) (requiring contractors "for the operation or provision and operation of jails" to assume all liability from the provision and operation of the jail); *C.f. Saiz v. Belen School Dist.*, 827 P.2d 102, 117 n.14 (N.M. 1992) (determining that independent contractors who were employed by school district to install lighting fell within the statutory exclusion for independent contractors and thus the school district was not liable for their tort). Accordingly, Count III as against the Bernalillo County Board of Commissioners and Ramon Rustin is futile.

In Count IV, Plaintiff brings a claim for negligent hiring, training and supervision against Defendants Bernalillo County and Ramon Rustin, among others.  [Doc. 43-1, p. 17]  The New Mexico Court of Appeals has held that New Mexico waived immunity for negligent hiring, training and supervision where the supervisory officer could be said to have caused an underlying tort for which immunity had been waived.  *Ortiz v. New Mexico State Police,* 814 P.2d 117, 118-19 (N.M. Ct. App. 1991).  As described in detail above, Plaintiff's allegations fail to establish that BCMDC policies caused CHC or its employees to provide constitutionally inadequate or negligent medical care to Plaintiff. Thus, it would be futile to allow Plaintiff to bring her negligent hiring, training and supervision claims against Bernalillo County and Ramon Rustin.

Finally, In Count V, Plaintiff brings a claim for outrageous conduct against all Defendants.  This Court has determined that Plaintiff's outrageous conduct claim is a claim for punitive damages.  [Doc. 42, pp. 30-31]  New Mexico has not waived immunity for awards of exemplary or punitive damages.  N.M.S.A. 1978, § 41-4-19(D) (2008). [Id.]  Accordingly, Plaintiff's outrageous conduct claim against the Bernalillo County Defendants is futile.

In sum, all of Plaintiff's claims against the Bernalillo County Board of Commissioners and Ramon Rustin are futile, and Plaintiff is denied leave to state claims against these parties in her final amended complaint.

### C.    MCKINLEY COUNTY DEFENDANTS

Plaintiff seeks to add the McKinley County Board of Commissioners; Bernella Knodle, a booking officer at the McKinley County Adult Detention Center; L. Daniel Yu, a screening officer at the McKinley County Adult Detention Center; Eric Jim, a deputy sheriff of the McKinley County Sheriff's Department; and Eric Chee, a deputy sheriff of the McKinley County Sheriff's Department.  [Doc. 43-1, ¶¶ 3, 8-13]  The Court will take each Defendant in turn.

Plaintiff alleges that Defendant Yu interviewed Plaintiff and completed a screening report which indicated that she had a fractured right arm, was unable to sign the screening form because of her broken arm, and was on hydrocodone for pain.  [Doc. 43-1, ¶ 39]  Plaintiff alleges that Defendant Yu "allowed the release [of] Ms. Lee despite knowing that Ms. Lee had sustained serious injuries which required surgery[.]"  [Doc. 43-1, ¶13]  She further alleges that Defendant Yu failed "to provide reasonable medical care and treatment to Plaintiff."  [Doc. 43-1, ¶ 116]  Finally, Plaintiff makes many allegations that suggest that Defendant Yu was charged with administering medical care.  [Doc. 43-1, ¶¶ 82-87]  Nonetheless, the Court must conclude that Plaintiff does not state a claim for either negligence or a violation of her constitutional rights against Defendant Yu. Though it may have been clear to Defendant Yu that Plaintiff would not receive her scheduled surgery if transferred to BCMDC, none of the allegations state or allow the inference that Defendant Yu knew or had reason to know that Plaintiff would not get timely medical treatment if transferred to the Bernalillo County Metropolitan Detention

Center.   Thus, Plaintiff fails to state a claim against Defendant Yu in Counts I, III, V and VII, and she will not be granted leave to add Defendant Yu as a party.

Plaintiff's allegations against Defendant Knodle suffer from the same defects.  She alleges that "Defendant Knodle released Ms. Lee despite knowing that Ms. Lee had sustained serious injuries which required surgery[.]"  [Doc. 43-1, ¶ 11]  Again, however, Plaintiff alleges no facts from which an inference could be drawn that Defendant Knodle knew or had reason to know that Plaintiff would be denied timely medical care despite being released and transferred.  Accordingly, the Court will not allow Plaintiff leave to amend her complaint to add Counts I, III, V and VII against Defendant Knodle.

In Count II, Plaintiff alleges that Defendant McKinley County failed to train and supervise its employees Yu and Knodle.  Plaintiff alleges that "Defendant McKinley County hired Defendant Yu . . . knowing he/she had inadequate experience and training in the administration of the health services center, and knowing that Defendant Yu had inadequate experience and training in administering medical care to inmates."  [Doc. 43-1, ¶ 82]  Plaintiff does not make any non-conclusory, non-speculative allegations that establish that McKinley County had actual or constructive notice of an omission in its training program which would cause a deprivation of adequate medical care.  *Connick*, 131 S.Ct. 1360.  Thus, Count II as against McKinley County is futile.

With the benefit of Plaintiff's proposed amended complaint and the briefing of the parties, it is clear that the allegations against Sheriff's Deputies Jim and Chee also fail to state a claim upon which relief can be granted.  Though Deputies Jim and Chee are

alleged to have known that Plaintiff was scheduled for surgery [Doc. 43-1, ¶ 35], and that she would not get that scheduled surgery if transferred to BCMDC, no facts in the complaint allege that they knew or had reason to know that Plaintiff would not get timely medical care while at BCMDC.  Thus, the Court will not allow Plaintiff to allege Counts III, V and VII against Defendants Jim and Chee.[11]

In Count IV, Plaintiff alleges that Defendants Jim[12] and Chee "violated Plaintiff's Fourth Amendment right to be free of excessive and unnecessary use of force by effecting her arrest and creating a serious known risk of physical trauma resulting in aggravation of an existing fracture of her arm in violation of clearly established law." [Doc. 43-1, ¶ 125]  However, the complaint is devoid of any facts suggesting that any force was used against Plaintiff—even handcuffing.  Plaintiff has cited *Martin v. Bd. of Cnty. Comm'rs of Cnty. of Pueblo*, 909 F.2d 402, 403-04 (10th Cir. 1990), in which our Tenth Circuit refused to dismiss the plaintiff's claim of excessive force where the officers arrested and transported the plaintiff, who had just been discharged from the hospital with a fractured neck, after being told that such transportation could cause injury including paralysis and the Plaintiff alleged further injury.  *Id.*  Plaintiff, however, has not alleged any facts which bring her claim within the holding of *Martin*, as she has not alleged that

---

[11] Because Plaintiff's headings allege that Counts III and V against "All Defendants," the Court has addressed Counts III and V as against Defendants Jim and Chee, though the bodies of these Counts do not indicate that they are intended to allege claims against Defendants Jim and Chee.

[12] Plaintiff actually refers to Eric "Lee," however, from the context of the allegations the Court believes Plaintiff means Eric Jim, because in neither the caption nor the "Parties, Jurisdiction, and Venue" section of her Complaint does Plaintiff refer to or identify Eric "Lee."

Deputies Jim and Chee were told that transporting her would cause a delay in treatment. [Doc. 43-1, p. 19]  As the Court reads the Complaint, Plaintiff asserts that she should not have been arrested because her arm was broken.  [Doc. 43-1, p. 19]  The mere fact that Plaintiff was arrested, i.e., seized, though her arm was broken, does not state a claim for unreasonable seizure or excessive force—a broken arm is not a get-out-of-jail-free card. Plaintiff was entitled to constitutionally adequate care, but not her freedom.  Accordingly, Plaintiff is not granted leave to amend her Complaint to add Count VI.

Plaintiff alleges a state law claim that Defendants Jim[13] and Chee falsely arrested or imprisoned her.  [Doc. 43-1, ¶ 135]  However, the complaint reveals that Defendants Jim and Chee had probable cause to arrest her on an outstanding warrant.  [Doc. 43-1, ¶ 34]  The deputies' probable cause defeats Plaintiff's false arrest or imprisonment claim. *See Santillo v. New Mexico Dep't Pub. Safety*, 173 P.3d 6, 10 (N.M. Ct. App. 2007). Accordingly, Plaintiff will not be granted leave to add Count VIII of her Complaint.

### D.    PLAINTIFF'S REQUEST FOR ADDITIONAL DISCOVERY

Finally, Plaintiff's request for discovery must be denied.  The Magistrate Judge previously denied one request for discovery by Plaintiff, and the Court is persuaded by the Magistrate's reasoning.  [Doc. 24]  Further, in her brief, Plaintiff requests discovery with the expectation that the "nurses or corrections officer/staff that had dealings with Plaintiff . . . will testify that their actions and omissions were governed by the policy and procedure of their employer (Defendants)."  [Doc. 35, pp. 12-13]  Plaintiff has already

---

[13] Plaintiff again refers to Eric Lee.

produced relevant policies, however, so she has not persuaded the Court that she will obtain evidence that a policy or custom was the moving force behind the alleged constitutional deprivation, and thus discovery in this case is inappropriate. *Lewis v. City of Ft. Collins*, 903 F.2d 752, 758 (10th Cir. 1990) (requiring the party requesting discovery to establish a connection between the discovery sought and how the discovery will enable to the party to provide evidence of his or her claim); *see also Myers,* 151 F.3d at 1316 (stating that a party bringing a claim under *Monell* must show that the employer's policy was the moving force behind the constitutional deprivation).

### E.   CAPTION

In the Court's *Memorandum Opinion and Order* dated March 31, 2014, the Court pointed out that in the caption of her Proposed Amended Complaint, Plaintiff did not specifically name the defendants she was intending to sue. [Doc. 42, pp. 16-17] Though the Court cited case law discussing the difficulties posed by a complaint that fails to name a party in the caption, Plaintiff did not, in her revised Proposed Amended Complaint, take the opportunity to revise her caption to name the proper parties. Plaintiff is instructed to do so in her final amended complaint. Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties; the title of other pleadings, after naming the first party on each side, may refer generally to other parties.").

## III.   CONCLUSION

"If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."

*Foman*, 371 U.S. at 182.  Here, Defendants have now all voiced their arguments on the merits of Plaintiff's claims.   Many of Plaintiff's claims have been dismissed or disallowed due to futility, but some of Plaintiff's claims survive.  Accordingly, Plaintiff is granted leave to file one last Amended Complaint, alleging: Count I, under the Fourteenth Amendment only against Defendant Cigarroa; Count III, only against CHC Cigarroa and Doe II; Count IV only against CHC, and Doe II; and Count V only against CHC, Cigarroa and Doe II.

**WHEREFORE IT IS HEREBY ORDERED** that *Plaintiff's Opposed Motion for Leave of Court to Amend Complaint Pursuant to the Court's Order* [Doc. 43] is **DENIED.**

**IT IS FURTHER HEREBY ORDERED** that Defendant CHC's *Partial Motion to Dismiss* is **GRANTED-IN-PART** and **DENIED-IN-**PART; Counts I and II against CHC are dismissed with prejudice.

**IT IS FURTHER HEREBY ORDERED** that Plaintiff must file her final Amended Complaint in compliance with this Order within 14 days of the date of this Order.

**SO ORDERED** this 9th day of September, 2014 in Albuquerque, New Mexico.


_____
M. CHRISTINA ARMIJO
Chief Judge, United States District Court