IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SAMANTHA LEE,

    Plaintiff,

v.                                                  No. CIV-12-1124 MCA/LAM

CORRECTIONAL HEALTHCARE
COMPANIES INC., et al.,

    Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART
## PLAINTIFF'S MOTION TO COMPEL [*Doc. 87*]

**THIS MATTER** is before the Court on Plaintiff's *Motion to Compel Discovery Responses From Defendants Correctional Healthcare Companies Inc., and Pam Cigarroa (Doc. 87)*, filed January 22, 2015. Defendants Correctional Healthcare Companies (hereinafter "CHC") and Pam Cigarroa filed a response to the motion on February 10, 2015 [*Doc. 98*], and Plaintiff filed a reply on February 25, 2015 [*Doc. 101*]. Having considered the motion, response, reply, record of this case, and relevant law, the Court **FINDS** that Plaintiff's *Motion to Compel Discovery Responses From Defendants Correctional Healthcare Companies Inc., and Pam Cigarroa (Doc. 87)* shall be **GRANTED in part** and **DENIED in part**.

    Plaintiff alleges that she received inadequate medical care when she was an inmate at the Metropolitan Detention Center in Bernalillo County, New Mexico. *See* [*Doc. 56* at 8-12] (Third Amended Complaint). Plaintiff alleges that, during the relevant time period, CHC was contracted to provide healthcare to the Bernalillo County Metropolitan Detention Center (hereinafter "BCMDC"), and that Defendant Cigarroa was employed as a registered nurse for CHC at BCMDC. *Id.* at 2. In her motion to compel, Plaintiff asks the Court to compel Defendants to

respond fully to: Interrogatory Nos. 3, 4, 5, 6, 7, 8, 10, 11, 12, 14, 15, 16, and 17 served on CHC; Interrogatory Nos. 4, 6, 10, and 12 served on Defendant Cigarroa; and Request for Production (hereinafter "RFP") Nos. 1, 2, 3, 4, 5, 6, 7, and 10 served on Defendant CHC.  [*Doc. 87*].  While the parties address these discovery requests in a different order in the response and reply, for ease of reference the Court will consider them in the order they are presented in Plaintiff's motion.

### *1.  CHC Interrogatory No. 3*

Interrogatory No. 3 asks CHC to identify by name, address and telephone number "each medical staff [member] who attended to Plaintiff at the Detention Center during her detention," and to describe any contact he or she had with Plaintiff.  [*Doc. 87* at 5].[1]  In response to the request, CHC referred Plaintiff to the medical record and information provided in the Joint Status Report, and then supplemented its response with the names of four members of the medical staff at BCMDC who provided the majority of medical care to Plaintiff.  *Id.*  In her motion to compel, Plaintiff contends that CHC's response is not sufficient because it fails to identify the contact these staff members had with Plaintiff.  *Id.*  In response to the motion to compel, CHC contends that the burden of reviewing Plaintiff's medical records is the same for either Plaintiff or CHC, so CHC has fully answered this interrogatory.  [*Doc. 98* at 4].  In her reply, Plaintiff contends that it is not clear from the medical records what contact each medical provider had with Plaintiff, and that much of the handwriting on the records is illegible.  [*Doc. 101* at 3-4].

Fed. R. Civ. P. 33(d)(1) provides that, if the answer to an interrogatory may be determined by examining a party's business records, and "if the burden of deriving or ascertaining the answer will be substantially the same for either party," the responding party may answer by "specifying

---

[1] The Court notes that Plaintiff attached to her motion copies of the relevant discovery requests and Defendants' responses thereto (*see Doc. 87-3*, Exhibit C), as well as Defendant's supplemental responses (*see Doc. 87-4*, Exhibit D), in compliance with Local Rule 37.1.  For ease of reference, however, the Court will cite to the requests and responses as quoted in, and in the order they are set forth in, Plaintiff's motion.

the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." The Court notes that, in Plaintiff's reply brief, she states that the reason she has asked for this information "is to avoid taking the deposition of each medical provider listed in her medical records and to ascertain the most relevant ones for purposes of deposition." [*Doc. 101* at 4]. Since CHC has clarified which four medical providers provided the majority of medical care to Plaintiff, to which Plaintiff does not appear to object, the Court finds that CHC has sufficiently answered the first part of the interrogatory. However, as Plaintiff points out, CHC does not answer the second part of the interrogatory, which asks the medical staff to describe any physical or verbal contact they had with Plaintiff. *See* [*Doc. 101* at 3]. Moreover, the medical records to which CHC refers contain illegible writing that Plaintiff is unable to decipher. *See, e.g.*, [*Doc. 101-3*, Exhibit C]. Therefore, the Court finds that the burden on Plaintiff is not the same as it is on CHC to determine what contact these medical providers had with Plaintiff. For these reasons, the Court finds that this request shall be granted in part, and CHC shall supplement its response to Interrogatory No. 3 by describing any contact, either physical or verbal, that the four medical providers listed in CHC's supplemental answer had with Plaintiff.

### *2. Defendant Cigarroa and CHC Interrogatory Nos. 10*

Interrogatory Nos. 10, respectively, ask Defendant Cigarroa to describe in detail why she believed that Plaintiff was receiving proper medical care while in custody at BCMDC, and asks CHC to describe in detail why CHC, their employees, and/or agents believed that Plaintiff was receiving proper medical care while in custody at BCMDC. [*Doc. 87* at 6]. Defendant Cigarroa objected on the grounds that the request seeks a legal conclusion, is vague and ambiguous, not limited in time or scope, overbroad, and not reasonably calculated to lead to the discovery of

admissible evidence, and then referred Plaintiff to the medical record.  *Id.*  CHC objected on the grounds that the request seeks a legal conclusion, and referred Plaintiff to the medical record.  *Id.*  In response to Plaintiff's motion to compel, Defendants contend that the requests require a detailed discussion of a long period of medical care, they resemble a request for a narrative account, and that they seek expert testimony as to the appropriate standard of care.  [*Doc. 98* at 6-7 and 13].  In reply, Plaintiff contends that the requests seek relevant information because Defendants have asserted as one of their defenses that Plaintiff was provided proper medical care, and that the requests do not seek a legal conclusion and do not ask for a narrative account.  [*Doc. 101* at 5].

   The Court finds that Defendants' objections should be overruled.  First, the interrogatories do not seek a legal conclusion but, instead, seek Defendants' opinions, which is acceptable under Rule 33.  *See* Fed. R. Civ. P. 33(a)(2) ("An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact.").  Second, the Court finds that the interrogatories are not vague or ambiguous as they relate to the time period during which Plaintiff was in custody.  Third, the Court finds that the interrogatories seek relevant information as to Defendants' defense that they provided adequate medical care.  Fourth, the Court overrules Defendant Cigarroa's conclusory statement that the interrogatory is overly broad because it is not accompanied with specific reasons or evidence as to why it is overly broad.  *See Oleson v. K-mart Corp.*, 175 F.R.D. 570, 571 (D.Kan. 1997) ("The objecting party has the burden to substantiate its objections. . . . The objecting party must specifically show how each discovery request is overly broad, burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden") (citations omitted).  Finally, the Court finds that any objections to these interrogatories that Defendants raised for the first time in their response to Plaintiff's motion to compel have been waived.  *See* Fed. R. Civ. P. 33(b)(4) ("Any ground not

stated in a timely objection is waived unless the court, for good cause, excuses the failure."). Therefore, the Court finds that Plaintiff's motion shall be granted as to these interrogatories.

### 3. *Defendant Cigarroa and CHC Interrogatory Nos. 12*

Interrogatory Nos. 12 ask Defendant Cigarroa why she administered naproxen to Plaintiff when she first arrived at BCMDC, instead of the medications she had been prescribed at Gallup Indian Health Services, and ask CHC to describe in detail why Plaintiff was not immediately transferred to the University of New Mexico Hospital upon arrival at BCMDC "despite her obvious need for medical care and medical records indicating that she had a time sensitive medical condition and was suffering from an angulated comminuted displaced fracture of the midshaft of the humerus large a [sic] fragment medially." [*Doc. 87* at 6-7]. Defendant Cigarroa merely responded by referring Plaintiff to the medical record, and CHC objected to the interrogatory on the grounds that it is vague and ambiguous as to the phrase "time sensitive medical condition," and referred Plaintiff to the medical record. *Id.* In response to the motion to compel, CHC states that the interrogatory requires the reasoning behind a complicated medical decision, is overly broad and unduly burdensome, the term "time sensitive medical condition" is vague, and the interrogatory assumes facts not in evidence because there is no evidence that Plaintiff was suffering from an urgent or time sensitive condition. [*Doc. 98* at 7]. Defendant Cigarroa stated in response to the motion to compel that she will supplement her answer to Interrogatory No. 12. *Id.* at 13. In reply, Plaintiff offered to reword Interrogatory No. 12 to CHC to remove the phrase "time sensitive medical condition," but maintains that CHC should answer the interrogatory. [*Doc. 101* at 6].

First, since Plaintiff did not address Defendant Cigarroa's supplemented response to Interrogatory No. 12 in her reply brief, it appears that this issue may be resolved. The Court notes

that on page one of Plaintiff's reply, she states that Defendants have failed to supplement certain answers which they stated would be supplemented, but Plaintiff does not state which answers Defendants have not yet supplemented.  *Id.* at 1.  If Defendant Cigarroa has not yet supplemented her response to this interrogatory, the Court orders her to do so within the time period the Court will set in this Order.  As for CHC's objections, the Court finds that Plaintiff's offer to remove the objected-to phrase "time sensitive medical condition" from the interrogatory addresses CHC's objection, and that CHC's objections raised in response to the motion to compel have been waived pursuant to Rule 33(b)(4).  The Court, therefore, finds that CHC shall supplement its response to this interrogatory as modified by Plaintiff in her reply brief, and shall provide a response that describes in detail why Plaintiff was not immediately transferred to the University of New Mexico Hospital upon arrival at BCMDC "despite her obvious need for medical care and medical records indicating that she . . . was suffering from an angulated comminuted displaced fracture of the midshaft of the humerus large a [sic] fragment medially."

### *4.  CHC Interrogatory Nos. 14, 15, 16 and 17*

These interrogatories ask why Plaintiff was prescribed certain medications and why an x-ray of her shoulder, and not her arm, was taken.  [*Doc. 87* at 7].  In response to Plaintiff's motion to compel, CHC provided supplemental responses to Interrogatory Nos. 14 and 15, and stated that it would provide supplemental answers to Interrogatory Nos. 16 and 17.  [*Doc. 98* at 8].  In her reply, Plaintiff states that it was improper for CHC to provide a supplemental answer in response to the motion to compel, and asks the Court to order CHC to supplement by way of serving Plaintiff with supplemental answers.  [*Doc. 101* at 6].  Plaintiff does not address Interrogatory Nos. 16 or 17 in her reply, which indicates that the issue has been resolved.  The Court agrees that it was improper for CHC to provide a supplemental response to a discovery

request in response to a motion to compel, so the Court will order CHC to serve its supplemental responses on Plaintiff in compliance with the requirements of Rule 33 that they be "answered separately and fully in writing under oath." To the extent CHC has not yet supplemented its answers to Interrogatory Nos. 16 and 17, the Court orders CHC to do so within the time period set in this Order and in compliance with Rule 33.

### *5.  CHC and Defendant Cigarroa Interrogatory Nos. 4*

These interrogatories ask Defendants to set forth the facts, as Defendants understand them, regarding the allegations contained in Plaintiffs' complaint, and the reasons why Defendants believe they are not liable for Plaintiff's damages, if that is what they are claiming. [*Doc. 87* at 8]. Defendants objected on the grounds that the interrogatories were compound, vague and ambiguous, overly broad, not reasonably calculated to lead to the discovery of admissible evidence, and seek a legal conclusion. *Id.* In response to the motion to compel, Defendants state that these interrogatories are improper because they seek a narrative account of the allegations in Plaintiff's complaint. [*Doc. 98* at 5 and 13]. In reply, Plaintiff states that these interrogatories relate to Defendants' defense that Plaintiff was provided adequate medical care, and that they are not improperly asking for a narrative account of the case. [*Doc. 101* at 4-5].

The Court finds that these interrogatories are overly broad and unduly burdensome because they ask for each and every fact that support Plaintiff's allegations. *See IBP, Inc. v. Mercantile Bank of Topeka*, 179 F.R.D. 316, 321 (D.Kan. 1998) (finding that such requests are improper and that the same information could better be provided through other discovery procedures such as depositions). While Plaintiff relies on this Court's order in another case finding that interrogatories asking for information relating to the defendant's comparative fault defense in her reply brief (*see Doc. 101* at 1-2 and 5, citing *Doc. 101-1*, Exhibit A), the interrogatory at issue in

that case asked for information relating to one defense, not for every fact supporting its entire case (*see Doc. 101-1* at 6). The Court, therefore, will deny Plaintiff's motion as to these interrogatories.

### 6. *CHC Interrogatory No. 5*

This interrogatory asks for all statements made by any CHC employee to Plaintiff, or concerning Plaintiff's medical treatment, from the time of her arrival in October 2010 to her release in August 2011. [*Doc. 87* at 8]. CHC responded by referring Plaintiff to the medical record. *Id.* In response to Plaintiff's motion to compel, CHC contends that the burden of reviewing Plaintiff's medical records is the same for either Plaintiff or CHC, so CHC has fully answered this interrogatory. [*Doc. 98* at 4]. In her reply, Plaintiff contends that the answer to this interrogatory is not clear from the medical records, and that much of the handwriting on the records is illegible. [*Doc. 101* at 3-4].

For the same reasons set forth *supra* regarding CHC Interrogatory No. 3, the Court finds that Defendant's response to CHC Interrogatory No. 5 is not sufficient because the medical records to which CHC refers contain illegible writing that Plaintiff is unable to decipher. *See, e.g.*, [*Doc. 101-3*, Exhibit C]. Moreover, it is not clear that those records would contain all statements made by any CHC employee to Plaintiff, or concerning Plaintiff's medical treatment, as requested in the interrogatory. Therefore, the Court finds that the burden on Plaintiff is not the same as it is on CHC to determine what statements were made to Plaintiff or concerning her medical treatment. Therefore, the Court finds that this request shall be granted and CHC shall, within the time limit set forth in this Order, supplement its response to Interrogatory No. 5 by describing all statements made by any CHC employee to Plaintiff, or concerning Plaintiff's medical treatment, from the time of her arrival in October 2010 to her release in August 2011, as set forth in the interrogatory.

### 7. *Defendant Cigarroa Interrogatory No. 6*

Interrogatory No. 6 to Defendant Cigarroa asks for her understanding of CHC's policy on when to transfer inmates to outside facilities for medical care, and she answered by stating that: "the policy at MDC is all inmates, regardless of medical condition, are required to be booked into the facility after arrest. Inmates are then assessed and transferred to a medical facility if their condition warrants." [*Doc. 87* at 9]. In response to the motion to compel, Defendant Cigarroa states that this answer is the extent of her understanding of the policy at BCMDC. [*Doc. 98* at 13]. In reply, Plaintiff's only objection to Defendant Cigarroa's response to the interrogatory is that Defendant Cigarroa "could have answered that there was no policy because CHC had none or any version thereof." [*Doc. 101* at 7]. The Court finds that Plaintiff's objection to Defendant Cigarroa's response to the interrogatory is without merit as Defendant Cigarroa has answered the interrogatory and her counsel has stated that this answer is the extent of her understanding of the policy. Therefore, the Court will deny Plaintiff's motion as to Interrogatory No. 6 served on Defendant Cigarroa.

### 8. *CHC Interrogatory Nos. 6 and 7*

CHC Interrogatory No. 6 asks for a description of the process used for the creation of the policy and procedure, both formal and informal, governing the conduct of CHC's employees, both currently and at the time of the incident at issue. [*Doc. 87* at 9]. CHC Interrogatory No. 7 asks whether the policy-makers and/or policy-enforcers recognize the Standards for Adult Local Detention Facilities as created by the American Correctional Association. *Id.* CHC objected to each of these interrogatories on the basis that they are vague and ambiguous, overly broad, not limited in time or scope, and not reasonably calculated to lead to the discovery of admissible evidence, and then stated that, at the time of the incident, the policies and procedures in place were

those of Bernalillo County, not CHC.  *Id.*   Plaintiff contends that CHC's response to Interrogatory No. 6 is insufficient because Plaintiff seeks to understand who creates the policy and procedure governing the conduct of CHC, that there is no dispute that CHC adopted the policies and procedures of BCMDC by way of their contract with BCMDC, and that CHC has now created and promulgated its own policies and procedures.  *Id.*  Plaintiff contends that the process by which these policies and procedures were created is relevant to Plaintiff's claims.  *Id.*  Plaintiff contends that CHC's response to Interrogatory No. 7 does not address the subject matter of the question.  *Id.*

In response to the motion to compel, CHC states that the policies and procedures in place today are not relevant to an incident from four years ago, that the history of policies that were not yet enacted at the time of Plaintiff's incarceration had no effect on her treatment, and that CHC is not in possession of the information relating to enactment of past policies as CHC was not part of this process.  [*Doc. 98* at 5-6].  In reply, Plaintiff states that CHC employees were trained on policies, whether those policies were those of BCMDC or CHC, and that BCMDC required, via its contract with CHC, that all CHC employees be trained under those policies.  [*Doc. 101*].

The Court finds that CHC's objections to these interrogatories should be overruled in part. The interrogatories are not vague or ambiguous and CHC fails to state how they are overly broad. However, while Interrogatory No. 6 is limited in time and scope to the present day and the time of the incident at issue in this case, Plaintiff fails to show how the current policies are relevant if they are different from the policies in effect at the time of the incident.  Therefore, the Court will require CHC to provide information regarding the policies in place at the time of the incident only, unless the current policies are the same as the ones in effect during that time period.  With regard to Interrogatory No. 7, the Court will require the identified policy-makers and/or policy-enforcers

whether they recognized the standards set forth in the interrogatory, but those individuals may tailor their responses to the time period during the time of the incident. The Court further finds that these interrogatories are reasonably calculated to lead to the discovery of admissible evidence as to Plaintiff's claims of inadequate medical care because they pertain to CHC's standard of care. Finally, the Court finds that CHC's responses that the policies and procedures in place at the time of the incident were those of Bernalillo County, not CHC, are not sufficient to respond to the interrogatories because CHC does not state that it is unable to obtain the information from Bernalillo County, or that CHC employees were not subject to those policies and procedures. For these reasons, the Court finds that Plaintiff's motion shall be granted as to these interrogatories as they pertain to the policies in effect at the time of the incident at issue in this case.

### 9. CHC Interrogatory No. 8

Plaintiff has withdrawn her request for a supplemental response to Interrogatory No. 8, so the Court finds that this request is moot. *See* [*Doc. 101* at 8].

### 10. CHC Interrogatory No. 11

This request asks "how many detainees/inmates complained/grieved about having broken bones" in the five years preceding the allegations in Plaintiff's compliant, the outcome of any such grievance decision, and the prognosis of each detainee/inmate. [*Doc. 87* at 10]. CHC objected on the grounds that the request seeks protected health information of other inmates that cannot be disclosed without their express written consent under the Health Insurance Portability and Accountability Act (hereinafter "HIPAA"), and because it is vague and ambiguous, and seeks information that is overly broad, burdensome, oppressive, and irrelevant to this case. *Id.* at 10-11. In response to the motion to compel, CHC contends that this interrogatory is a fishing expedition seeking other alleged acts of wrongdoing. [*Doc. 98* at 7]. CHC further states that the extensive

redaction that would be required to protect the confidential information would render the documents meaningless and be an undue burden on CHC.  *Id.*

The Court finds that CHC's objections to this interrogatory should be overruled.  Plaintiff is not seeking medical documents which would have to be redacted, she is merely seeking an answer that states the number of detainees/inmates who complained/grieved about having broken bones in a limited time period, the outcome of the grievance decision (presumably whether the inmate/detainee was or was not successful), and the prognosis of each detainee/inmate.  These answers do not need to include any confidential information such as names or other identifying information.  The Court further finds that CHC's conclusory objections that the interrogatory is vague, ambiguous, overly broad, burdensome, and oppressive are improper because they are made without any support.  Finally, the Court finds that this request seeks information relevant to Plaintiff's claim for punitive damages as to whether there was a pattern or practice of behavior.  For these reasons, the Court finds that Plaintiff's motion should be granted as to this interrogatory.

### 11.  CHC RFP No. 1

This request asks for the tracking logs from October 14, 2010 to August 15, 2011 pertaining to Plaintiff from the following: Medical Reception, Intra-system Transfer, Chronic Disease, Urgent/Emergent Care, and Nurse and Provider Sick Call Logs or the equivalent. [*Doc. 87* at 11].   CHC objected on the grounds that the request is vague and ambiguous, and then responded that for the requested timeframe, CHC did not create, possess, or maintain any logs entitled "Medical Reception," "Intra-System Transfer," "Chronic Disease," or "Urgent/Emergent Care."  *Id.*  Plaintiff contends that CHC still has an obligation to obtain the requested records from those it can legally do so, such as BCMDC or UNMH.  *Id.*  In response to the motion to compel, CHC contends that it does not have the legal right to receive on demand the requested logs

prepared by any other party, and that CHC would have to submit a HIPAA request signed by Plaintiff, which would be just as easy or easier for Plaintiff do to as it would be for CHC since these are Plaintiff's own medical records . [*Doc. 98* at 8-9]. In her reply, Plaintiff states that CHC tracks certain information pursuant to audits required by its contract with BCMDC, and that CHC has an obligation to obtain the requested records from those it can legally do so, such as BCMDC or UNMH. [*Doc. 101* at 8-9]. The Court finds that CHC's response to this interrogatory that it does not have the requested logs, and that it does not have a legal right to demand the information, is sufficient. Plaintiff's contention that CHC has an obligation to obtain the requested records from those it can legally do so fails to take into account CHC's explanation that it would have to submit a HIPAA request signed by Plaintiff to do so, which Plaintiff could just as easily do. The Court finds that Defendant has met its burden under Fed. R. Civ. P. 34(a)(1) which is to produce items in the responding party's possession, custody, or control, and, therefore, will deny this request.

### *12.   CHC RFP No. 2*

Plaintiff states in her reply brief that she will remove this request from her requested items to be produced, so the Court finds that this request is moot. *See* [*Doc. 101* at 9].

### *13.   CHC RFP Nos. 3 and 4*

These requests ask for infirmary tracking logs (RFP No. 3) and tracking logs or a list of patients sent to the emergency department/hospitalized (RFP. No. 4) from October 14, 2010 to August 15, 2011, including inmate names, PPS numbers, dates of birth, reasons for admission or emergency visit/hospitalization, and dates of admission and discharge. [*Doc. 87* at 11-12]. CHC objected to these requests on the grounds that they seek protected health information of inmates other than Plaintiff, and are overly broad, unduly burdensome, oppressive, and irrelevant.

*Id.*  CHC also objected to RFP No. 3 on the grounds that no such documents existed at the time frame noted in the request.  *Id.* at 11.  In response to Plaintiff's motion to compel, CHC states that the logs requested in RFP No. 3 do not exist, and that RFP No. 4 constitutes a fishing expedition seeking information about other supposed wrongdoing.  [*Doc. 98* at 9-10].  In reply, Plaintiff contends that she is willing to receive redacted documents, that the information responsive to RFP No. 3 does exist as shown by Exhibit D, and that CHC has an obligation to obtain the information from parties from which it can legally do so.  [*Doc. 101* at 10].

Plaintiff states that Exhibit D is part of the contract between BCMDC and CHC indicating information that is tracked.  *See* [*Doc. 101* at 9].  Plaintiff fails to cite what portion of this document shows that the information sought in these requests is maintained by either BCMDC or CHC.  As best as the Court can tell, Document 101-4, Exhibit D, page 3, indicates that BCMDC or CHC tracks the number of inpatient hospitalizations, length of stay at hospital, number of out-patient visits, and number of ambulance/emergency transports for the preceding two years. However, this does not show that either BCMDC or CHC keep track of the specific information sought in these requests, such as patient names, dates of birth, or reasons for admission or discharge.  Moreover, Plaintiff fails to address Defendant's objection that this information is confidential, or how redaction of the confidential information would provide Plaintiff with any information other than the number of patients sent to the infirmary or hospitalized.  Therefore, the Court will deny Plaintiff's requests to the extent they ask for inmate names, PPS numbers, dates of birth, reasons for admission or emergency visit/hospitalization, and dates of admission and discharge.  However, since either BCMDC or CHC track the number of patients sent to the emergency department or hospitalized, as well as the number of offsite visits, the Court will grant

Plaintiff's request in part and order CHC to provide those numbers from October 14, 2010 to August 15, 2011.

### 14. CHC RFP No. 5

This request asks for mortality and sentinel event reviews for deaths that occurred in custody from October 14, 2010 to August 15, 2011. [*Doc. 87* at 12]. CHC objected on the grounds that the request is overly broad, burdensome, oppressive, irrelevant, seeks protected health information of other inmates, and is protected by the Review Organization Immunity Act (hereinafter "ROIA"). *Id.* In Plaintiff's motion to compel, she contends that CHC's response is "contrary to what is required under the policies and procedures of BCMDC and CHC" and cites to those policies at Exhibit E. *Id.* at 12-13 (citing *Doc. 87-5*, Exhibit E). In CHC's response to the motion to compel, it maintains its objections to this request, and contends that "given the fact that Plaintiff did not die, this Request is certainly an invalid fishing expedition for other instances of supposed wrongdoing." [*Doc. 98* at 10]. In Plaintiff's reply, she states that she is not seeking names or other identifying information, that ROIA does not apply to the items being requested because CHC has not shown that the materials were acquired by a review organization, and asks the Court to conduct an *in camera* review of the documents to determine whether they are discoverable. [*Doc. 101* at 11-12].

The Court finds that Plaintiff's motion should be denied as to this request because she has failed to show how this information is relevant to any party's claim or defense or is reasonably calculated to lead to the discovery of admissible evidence. While Rule 26(b)(1) permits the discovery of any non-privileged matter that is relevant to any party's claim or defense, and is at least reasonably calculated to lead to the discovery of admissible evidence, here Plaintiff fails to state why this information is relevant. Plaintiff failed to set forth any reason for this request in her

15

e-mail to CHC regarding its objections (*see Doc. 87-1*, Exhibit A, at 1), in her motion to compel (*see Doc. 87* at 12-13), or in her reply brief, other than stating that the information relates to her claims (*see Doc. 101* at 12). For this reason, the Court will deny this request.

### 15.   CHC RFP No. 6

This request asks for "all information" concerning CHC's staffing patterns, including allocated positions and positions actually filled from October 14, 2010 to present. [*Doc. 87* at 12]. CHC objected on the grounds that the request is overly broad, not limited in scope, burdensome, oppressive, and irrelevant. *Id.* In Plaintiff's motion to compel, she contends that CHC's response is "contrary to what is required under the policies and procedures of BCMDC and CHC" and cites to those policies at Exhibit E. *Id.* at 12-13 (citing *Doc. 87-5*, Exhibit E). In CHC's response to the motion to compel, it maintains its objections to this request, and contends that staffing patterns after Plaintiff was released from BCMDC are "utterly irrelevant," and that the request for all information is clearly vague and overly broad. [*Doc. 98* at 11]. In Plaintiff's reply, she states that Exhibit D shows that CHC does keep track of this information and that the information is relevant as to Plaintiff's claims for negligent hiring and training. [*Doc. 101* at 13].

The Court finds that this request is overly broad and vague as it asks for "all information" concerning staffing patterns, which could mean any number of things. Moreover, the request does not state that it is limited to a specific medical center or detention center, though presumably Plaintiff meant staffing patterns at BCMDC. The request also does not specify which type of staff is at issue, such as medical, administrative, custodial, etc. Finally, Plaintiff fails to state where in Exhibit D to Document 101 it is shown that CHC maintains this information. For these reasons, the Court will deny Plaintiff's motion as to this request.

### *16.   CHC RFP No. 7*

This request asks for "all information" concerning the monthly budget meetings between BCMDC and CHC, including minute meetings, attendance/sign-in logs, agendas, and notes/memos, "or other document[s] having anything to do with the monthly budget meetings." [*Doc. 87* at 12].   CHC objected on the grounds that the request is overly broad, not limited in time or scope, burdensome, oppressive, and irrelevant.   *Id.*   In Plaintiff's motion to compel, she contends that CHC's response is "contrary to what is required under the policies and procedures of BCMDC and CHC" and cites to those policies at Exhibit E.   *Id.* at 12-13 (citing *Doc. 87-5*, Exhibit E).   In CHC's response to the motion to compel, it maintains its objections to this request, and contends that budgetary meetings from years before Plaintiff's incarceration and after Plaintiff was released from BCMDC are "utterly irrelevant," and that the request for "all information" is clearly vague and overly broad.   [*Doc. 98* at 11].   CHC also states that it is not in possession of these documents, if they even exist, and, if they do exist, Plaintiff can obtain them from Bernalillo County as easily as CHC.   *Id.* at 11-12.   In Plaintiff's reply, she states again that CHC's answer is contrary to what is required under the policies and procedures set out in Exhibit E attached to Document 87, and that the information is provided in CHC's contract at Exhibit D to Document 101, and that "[i]f they are under budget and as a result choose to not hire necessary personnel or undercut the other areas sue [sic] to budget issues, this would go to Plaintiff's allegations as contained in Count III of Plaintiff's Third Amended Complaint."   [*Doc. 101* at 13].

The Court finds that this request is overly broad as it asks for "all information" concerning the monthly budget meetings between BCMDC and CHC and is not limited to a certain time period.   The Court also finds that Plaintiff has not made a sufficient showing that the information is reasonably calculated to lead to the discovery of admissible evidence.   While Plaintiff states in

her reply brief that the information may be relevant <u>if</u> CHC is under budget and <u>if</u> they choose not to hire necessary personnel (*see Doc. 101* at 13), Plaintiff fails to provide any support for these statements and, thus, they appear to be mere speculation which is insufficient to make the requisite showing of relevance to Plaintiff's claims. For these reasons, the Court will deny Plaintiff's motion as to this request.

### 17.   CHC RFP No. 10

This request asks for CHC's financial records which show CHC's profits from 2005 to the present including net gains and losses, bonuses paid to executives and/or shareholders, investments made on behalf of and for the benefit of CHC, and the current salary of CHC's CEO. [*Doc. 87* at 13]. CHC objected on the grounds that the request is overly broad, burdensome, oppressive, and irrelevant. *Id.* In Plaintiff's motion to compel, she states that there is an incentive for CHC to try to keep inmate care costs as low as possible because it is a for-profit company and is given a limited amount of money to spend per inmate per day. *Id.* at 13. In CHC's response to the motion to compel, it maintains its objections to this request, and contends that financial information from years before Plaintiff's incarceration and after Plaintiff was released from BCMDC are "utterly irrelevant," and that the request for "all information" is clearly vague and overly broad. [*Doc. 98* at 12]. CHC further contends that Plaintiff fails to support her claim that CHC was motivated by financial considerations because CHC pays for the care of inmates while they are at the facility, and BCMDC pays for their care when they are hospitalized, and Plaintiff alleges that CHC breached the standard of care by *not* sending her to the hospital immediately. *Id.* In Plaintiff's reply, she maintains her reasoning for the request, and offers to compromise by limiting the request from 2009 to 2012. [*Doc. 101* at 14].

The Court finds that Plaintiff has not made a sufficient showing that the information sought in this request is reasonably calculated to lead to the discovery of admissible evidence. While Plaintiff contends that the information would show that CHC tries to keep inmate care costs as low as possible, Plaintiff fails to explain how this contention is relevant to the parties' claims or defenses. In addition, Plaintiff fails to show how CHC's financial records are necessary to show that they are a for-profit company, which they do not appear to deny. For these reasons, the Court will deny Plaintiff's motion as to this request.

**IT IS THEREFORE ORDERED**, for the reasons stated above, that Plaintiff's *Motion to Compel Discovery Responses From Defendants Correctional Healthcare Companies Inc., and Pam Cigarroa (Doc. 87)* is **GRANTED in part** and **DENIED in part**. Defendants shall supplement their responses to Plaintiff's discovery requests, as set forth above, **no later than ten (10) days after the entry of this Order**.

**IT IS SO ORDERED.**

_____
**LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**