IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SAMANTHA LEE,

    Plaintiff,

v.                                                                            No. 12-CV-1124 MCA/LAM

CORRECTIONAL HEALTHCARE

COMPANIES, et al.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on *Plaintiff's Motion for Leave of Court to File Plaintiff's Motion for the Court to Reconsider Memorandum Opinion and Order.* [Doc. 86]  Specifically, Plaintiff requests this Court to reconsider the dismissal of Bernalillo County and Warden Rustin as parties to this lawsuit.  The currently remaining Defendants, Correctional Healthcare Companies and Pam Cigarroa, take no position on Plaintiff's Motion and have filed no responsive documents.  Having considered the Motion, the relevant law, and being otherwise fully advised in the premises, the Court **DENIES** the Motion.

**BACKGROUND**

Plaintiff broke her arm and was taken by McKinley County Sheriff's Deputies to receive treatment from Indian Health Services (IHS) in Gallup, New Mexico.  [Doc. 9, ¶ 25]  She was then transported McKinley County Adult Detention Center, and within hours transferred to the Bernalillo County Metropolitan Detention Center (BCMDC),

1

which is owned by Bernalillo County. [Doc. 9, ¶¶ 27-28] Plaintiff was booked into BCMDC and not sent for emergency care. [Doc. 9, ¶¶ 29, 34, 35] Though Indian Health Services scheduled surgery for Plaintiff within three days of the date she broke her arm, it was several days before Plaintiff's arm was X-rayed at BCMDC, six days before she saw a medical doctor, nearly two weeks before she was taken to an orthopedic clinic, and approximately three months before she received surgery for her arm. [Doc. 9, ¶¶ 25, 26, 33, 36, 37, 40] Plaintiff was also initially denied pain medication other than Naproxen at BCMDC. [Doc. 9, ¶ 34] After surgery, Plaintiff re-injured her arm and eventually developed an infection which took months of oral and intravenous antibiotic treatment and additional surgeries. [Doc. 9, ¶¶ 49, 50, 51] Plaintiff alleges that she suffers permanent damage and disfigurement from inadequate medical treatment. [Doc. 9, ¶ 52, 53] She thus brought suit against eight Defendants including the Board of County Commissioners for the County of Bernalillo (hereafter Bernalillo County) and Ramon Rustin, the Warden of BCMDC. [Doc. 9, ¶ 8]

Plaintiff brought the following claims against Bernalillo County and Ramon Rustin: 1) violation of her Eighth Amendment right to Constitutionally adequate medical care (Count I); 2) "Eighth Amendment Violation-Failure to Train and Supervise" (Count II); negligence (Count III); negligent hiring, training and supervision pursuant to state law (Count IV); and "outrageous conduct" under state law (Count V). [Doc. 9] Plaintiff then sought leave to amend her complaint to add parties unrelated to Bernalillo County, but the Bernalillo County Defendants opposed the Motion on the grounds that it would be futile to allow Plaintiff to continue to allege her claims against Bernalillo County. [Doc.

2

43; Doc. 44] The Court agreed with the Bernalillo County Defendants. [Doc. 53] Thus, the Court denied Plaintiff's Motion to Amend (with regard to Plaintiff's proposed amended complaint) but granted Plaintiff leave to file an amended complaint as to the claims the Court identified which were not futile. [Doc. 53, p. 32] Plaintiff complied and filed her *Third Amended Complaint for Damages Due to Failure to Provide Medical Care*, not alleging counts against Bernalillo County and Ramon Rustin. [Doc. 56] Accordingly, the currently remaining Defendants are CHC; Pam Cigarroa, a nurse employed by CHC; and John or Jane Doe II, the Medical Director employed by CHC (collectively, the CHC Defendants). [Doc. 56]

Plaintiff now moves this Court to reconsider its decision on Plaintiff's Motion to Amend, which resulted in the dismissal of Defendants Bernalillo County and Ramon Rustin. [Doc. 86] The CHC Defendants do not take a position with respect to Plaintiff's Motion. [Doc. 86, p. 1] Plaintiff states that discovery revealed that CHC, which contracts with Bernalillo County to run BCMDC, did not have pertinent policies but instead followed Bernalillo County's policies. [Doc.86, pp. 1-3] CHC answered an interrogatory stating "All policies and procedures governing medical care at the time of this incident were those of [BCMDC] and/or Bernalillo County, not CHC." [Doc. 86, p. 2] Further, when asked to describe her "understanding of CHC's policy on when to transfer inmates to outside facilities for medical care," Pam Cigarroa answered that "the policy at [BCMDC] is all inmates, regardless of medical condition, are required to be booked into the facility after arrest. Inmates are then assessed and transferred to a medical facility if their condition warrants." [Doc. 86, p. 2] Plaintiff asserts that "[t]his

is contrary to the written policy at BCMDC." [Doc. 86] The pertinent provisions of the written policy identified by Plaintiff state:

> An Intake Screening is performed by qualified health care personnel on all inmates, including transfers, immediately upon their arrival at the facility. Persons, who are unconscious, semiconscious, *have obvious fractures*, are pregnant and using heroin *or are otherwise urgently in need of medical attention*, will be sent to the University Hospital for emergency care.
> . . .
> *Prior to a detainee being booked* a qualified medical staff member will perform an intake medical screening on all individuals brought in by law enforcement agency. *If the detainee has injuries or illnesses, they will be evaluated and the determination made by Med #1 or the Medical Director whether he/she will be approved to be booked or referred directly to a hospital emergency department.*

[Doc. 86-2, p. 1 (emphasis added)] Plaintiff argues that either Pam Cigarroa or a booking officer employed by Bernalillo County wrongly booked her instead of sending her for emergency medical care, and thus Bernalillo County and Ramon Rustin in his official capacity can be held liable. [Doc. 86, pp. 4, 6-7]

**ANALYSIS**

"[A] motion for reconsideration filed prior to final judgment [is] nothing more than an interlocutory motion invoking the district court's general discretionary authority to review and revise interlocutory rulings prior to entry of final judgment." *Trujillo v. Bd. of Ed. of Albuquerque Pub. Sch.*, 212 F. App'x 760, 765 (10th Cir. 2007) (unpublished decision) (internal quotation marks and citation omitted). Our Tenth Circuit explained that the stricter standards of Rules 59 and 60 do not apply, *id.*; however, it did not elucidate further on what factors a district court might wish to weigh if considering a motion to reconsider. Noting as much, the Honorable David T. Thuma, Bankruptcy

4

Judge for this District Court, recently canvassed the decisions of various district courts within the Tenth Circuit, and winnowed out some guiding principles applicable when deciding interlocutory motions to reconsider. *Neff v. Akbari-Shahmirzadi* (*In re Akbari-Shahmirzadi*), 2013 WL 1099794, *4 (D.N.M. 2013) (discussing and considering the various standards developed by the district courts within the Tenth Circuit). He stated that the Court would view more liberally motions to reconsider

> based on either (i) law applicable to the ruling that was not cited by the Court or the parties, and that could change the outcome; or (ii) evidence not previously submitted to the Court, *if* the movant has reasonably excused its failure to submit the evidence in the first instance, and *if* the evidence could change the result.

*Id.* at *6 (emphasis in original). However, the Court would more strictly view "motions to reconsider that simply rehash prior arguments made and ruled against." *Id.* (internal quotation marks omitted). This Court concludes that these considerations are appropriate and will apply them in exercising its discretion in considering the present Motion.

Finally, relevant to the present motion is 28 U.S.C. § 1927, which states:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Plaintiff's *Motion* reveals that Plaintiff's counsel continues to fundamentally misunderstand the law governing municipal liability. Despite this Court issuing two Memorandum Opinions and Orders explaining municipal liability and citing to pertinent case law [Doc. 53, pp. 14-15, 23; Doc. 42, pp. 11-12], Plaintiff continues to 1) fail to identify a policy enacted by Bernalillo County or Ramon Rustin that <u>*caused*</u> the violation

5

of her rights, and 2) rely on allegations of *negligence* in attempting to establish *unconstitutional* conduct. Plaintiff states: "As maintained throughout the course of this litigation, *the failure to follow* the policies and procedures as well as the conflict within the policies and procedures were, in part, the moving force behind the *civil rights violations* alleged by Plaintiff." [Doc. 86, p. 4 (emphasis added)] As this Court has already explained, municipal liability only lies when *following* a municipal policy causes the deprivation of civil rights, not when the opposite occurs, i.e., the *failure to follow* a municipal policy causes the civil rights violation. *Monell v. Dep't Soc. Servs. of New York*, 436 U.S. 658, 694 (1978) ("[I]t is when *execution* of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." (Emphasis added)) [Doc. 53, pp. 8-10, 14-15, 23]

The Court notes that it does not take a position on whether our Tenth Circuit[1] applies the law as stated in *Ancata v. Prison Health Services*, *Inc.*, 769 F.2d 700, 705 (11th Cir. 1985), an Eleventh Circuit Court case cited by Plaintiff. *Ancata* states: "Although Prison Health Services has contracted to perform an obligation owed by the county, the county itself remains liable for any constitutional deprivations caused by the

---

[1] Plaintiff cites *West v. Atkins*, 487 U.S. 42, 56 (1988) and *Nieto v. Kapoor*, 268 F.3d 1208, 1216 (10th Cir. 2001) for the proposition that Bernalillo County cannot avoid its constitutional obligations under the Eighth and Fourteenth Amendments simply by contracting out services. *West* states: "[c]ontracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody." *West*, 487 U.S. at 56. For purposes of this motion, the Court assumes this statement applies to the facts of this case, though this Court notes that the statement may be dicta, as the issue in *West* (as well as in *Nieto*) was whether the private actor could be liable under Section 1983. *West,* 487 U.S. at 56; *Nieto*, 268 F.3d at 1215.

6

policies or customs of the Health Service.  In that sense, the county's duty is non-delegable." *Id.*  [Doc. 86, p. 6]  While Plaintiff cites this language, she omits the footnote thereto, which is particularly pertinent, and which states:  "However, if a constitutional tort committed by an employee of Prison Health Services was not a result of the policy or custom of the entity, then the county would not be liable.  Liability for the independent actions of a health service employee would be based upon respondeat superior and thus not actionable against the county under § 1983." *Id.* at 705, n.8.  Here, Plaintiff does not argue that *following* the policy caused the injury, but rather argues that *violation* of the policy caused the injury.[2]  For purposes of municipal liability under *Monell*, this distinction is crucial.  *Monell*, 436 U.S. at 694; *Porro v. Barnes*, 624 F.3d 1322, 1328-29 (10th Cir. 2010) (finding no municipal violation of § 1983 where county trained jailers only to use Tasers in limited circumstances, and officer violated such policy, causing injury to the plaintiff); *Muskrat v. Deer Creek Pub. Sch.*, 715 F.3d 775, 788-89 (10th Cir. 2013) ("[T]he district . . . had a policy of using timeouts only when a child posed a danger to himself or others, and the district court assumed that J.M. was never a danger to himself or others—meaning that Deer Creek staff members may have *violated* the school's timeout policy.  But if they violated the policy, we obviously cannot conclude that the policy caused J.M.'s alleged constitutional injury."); *Simmons v. Uintah Health Care Special Dist.*, 506 F.3d 1281, 1284 (10th Cir. 2007) ("When employees take actions

---

[2] For example, Plaintiff argues:  "Likewise, BCMDC and Rustin are liable for any *violations* of said policy or deviations from said policy. . . .  If an employee of CHC does not follow the policy and therefore causes harm and violates an inmate's rights then Bernalillo County and Warden Rustin are liable."  [Doc. 86, p. 6 (Emphasis added.)]

7

specifically authorized by policy or custom, their actions can be fairly said to be the municipality's.  But when they act inconsistently with official policy or custom, though perhaps even still within the scope of employment, that will not suffice.").  This Court did not conclude, as suggested by Plaintiff's counsel's argument, that Bernalillo County Defendants contracted away their constitutional duty to ensure the constitutionally adequate medical care for their inmates.  This Court concluded that Plaintiff failed to state a claim under *Monell* that the Bernalillo County Defendants deprived Plaintiff of constitutionally adequate medical care.  [Doc. 53, pp. 22-24]

In addition to the *Monell* argument, Plaintiff may be arguing that BCMDC and Ramon Rustin should be parties given alleged negligence of a booking officer for failing to send Plaintiff for emergency care rather than booking Plaintiff.  [Doc. 86, pp. 4, 6]  However, as explained by the Court already, "The Court is not persuaded by Plaintiff's argument that she has stated a claim for deliberate indifference because Ms. Cigarroa failed to immediately send Plaintiff to the emergency room on her arrival at BCMDC, given that Plaintiff's allegations suggest she was discharged from the emergency room [by IHS] and nothing happened between that discharge and her arrival at BCMDC to require additional emergency care, as opposed to surgery."   [Doc. 53, p. 18, n.8]  Regardless of whether it was Ms. Cigarroa or the booking officer who allowed Plaintiff to be booked and did not send Plaintiff for emergency care, Plaintiff has not stated a claim under *Iqbal*.  She had just received emergency care at IHS, and there are no well-pleaded facts indicating Plaintiff needed emergency care again.  Viewing the facts

pleaded in the light most favorable to Plaintiff, she needed surgery on or around Monday, October 18, 2010, but she did not need additional emergency care.[3]

Finally, with regard to claims of negligence, the State of New Mexico can and indeed has, declined to include most independent contractors (including CHC and its employees) as public employees.  N.M.S.A. 1978, § 41-4-3(F) (2009).  [Doc. 53, pp. 24-25]  Thus, Plaintiff's reliance on N.M.S.A. 1978, § 41-4-6 (2007) is misplaced, as it only applies to public employees.  Further, N.M.S.A. 1978, § 40-4-12 (1977) does not apply to claims of negligence, and, again, Plaintiff has not stated a claim of a constitutional violation as against the Bernalillo County Defendants.  Finally, the Court does not believe that either Ms. Cigarroa (a nurse) or the Medical Director for CHC can be considered law enforcement officers.  Section 41-4-3(D) (defining law enforcement officer as one "whose principal duties under law are to hold in custody any person accused of a criminal offense, to maintain public order or to make arrests for crimes").  Thus, Plaintiff's reliance on the New Mexico Tort Claims Act is misplaced.

For the foregoing reasons, the Court denies *Plaintiff's Motion for Leave of Court to File Plaintiff's Motion for the Court to Reconsider Memorandum Opinion and Order*. [Doc. 86]  Moreover, the Court has explained *Monell* and its progeny multiple times during the course of these proceedings and cited pertinent case law, which Plaintiff's Counsel has either failed to read or failed to comprehend.  Should Plaintiff's Counsel

---

[3] The Court also notes that the MDC policy attached by Plaintiff and her argument as to the failure to send Ms. Lee immediately for medical care rather than booking her are neither new evidence nor new argument [Doc. 35, pp. 6-7, 12-15; Doc. 35-2], and both were expressly considered and rejected by the Court.  [Doc. 53, pp. 14-15, 18, n.8]

9

continue to pursue this same, meritless argument during the course of these proceedings, the Court may conclude that Plaintiff's Counsel is unreasonably and vexatiously multiplying the proceedings. Such a conclusion will result in Plaintiff's Counsel being personally responsible for the costs, expenses, and attorney's fees incurred by any opposing party based on such argument. 28 U.S.C. § 1927.

**CONCLUSION**

**IT IS THEREFORE HEREBY ORDERED** that *Plaintiff's Motion for Leave of Court to File Plaintiff's Motion for the Court to Reconsider Memorandum Opinion and Order [Doc. 53]* [Doc. 86] is hereby **DENIED**.

So ordered this 14th day of April, 2015 in Albuquerque, New Mexico.

_____
M. CHRISTINA ARMIJO
Chief Judge, United States District Court